2012 ME 57

**Ralph NADER et al.**

v.

**The MAINE DEMOCRATIC PARTY et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2011.

Decided: April 19, 2012.

---

Harold Burbank, II, Esq., Canton, Connecticut, Lynne A. Williams, Esq., Bar Harbor, and Oliver B. Hall, Esq. (orally), Washington, District of Columbia, for appellants Ralph Nader, Christopher Droznick, Nancy Oden, and Rosemary Whittaker.

Stephen E.F. Langsdorf, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Augusta, for appellees The Maine Democratic Party, The Democratic National Committee, Kerry–Edwards 2004, Inc., Dorothy Melanson, Terry McAuliffe.

Peter J. Brann, Esq., and Stacy O. Stitham, Esq. (orally), Brann & Isaacson, Lewiston, for appellees The Ballot Project, Inc., and Toby Moffett.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

Concurrence: SILVER, and JABAR, JJ.

ALEXANDER, J.

[¶1] In this appeal we consider whether the Maine anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, 14 M.R.S. § 556 (2011),[1] may be invoked to deprive a minor-party candidate of his day in court on a suit in which he alleges that he was subject to abuses of process, damaging to his candidacy, by organizations and individuals who conspired to take actions to prevent or complicate his inclusion on the ballot in Maine and other jurisdictions during the 2004 presidential election. We conclude that the Maine anti-SLAPP statute may not be invoked to achieve dismissal of claims alleging abuses of process without giving the plaintiff the opportunity to establish a prima facie case to support the claims.

[¶2] Ralph Nader, Christopher Droznick, Nancy Oden, and Rosemary Whittaker (collectively, Nader) appeal from a judgment of the Superior Court (Washington County, *Cuddy, J.*) granting the opposing parties' special motions to dismiss Nader's complaint pursuant to the Maine anti-SLAPP statute, 14 M.R.S. § 556. The opposing parties are (1) the Maine Democratic Party, the Democratic National Committee, Kerry–Edwards 2004, Inc., Dorothy Melanson, and Terry McAuliffe (collectively, MDP); and (2) Toby Moffett and The Ballot Project, Inc. (collectively, Moffett).

[¶3] Nader argues that the court erred in interpreting and applying the anti-SLAPP statute when it granted MDP's and Moffett's special motions to dismiss; that the anti-SLAPP statute, as applied by the court, improperly abrogates common law tort law; and that the anti-SLAPP statute is unconstitutional as applied by the court. Moffett, as cross-appellant, appeals from the court's separately entered order on his motion for attorney fees, arguing that the court abused its discretion when it awarded him only one dollar in costs and attorney fees following the grant of his special motion to dismiss. Concluding that a legal standard different from that applied by the trial court applies in this anti-SLAPP matter, we vacate the judgment granting MDP's and Moffett's special motions to dismiss and granting Moffett's motion for attorney fees.

## I. CASE HISTORY

[¶4] Ralph Nader was an independent candidate for President in the 2004 presidential election. His presidential electors in Maine included Christopher Droznick, Nancy Oden, and Rosemary Whittaker. Nader and his Maine presidential electors are collectively referenced as "Nader" in this opinion.[2]

[¶5] In November 2009, Nader filed a six-count complaint against MDP and Moffett based on actions that were alleged to have occurred prior to the 2004 presidential election. The complaint contains counts alleging (I) civil conspiracy; (II)

---

1. Title 14 M.R.S. § 556 (2011) has been amended by P.L.2011, ch. 559, § A–13 (to be effective ninety days after adjournment of the Legislature in 2012, *see* Me. Const. art. IV, pt. 3, § 16), to provide that "[t]he special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require."

2. An additional plaintiff, J. Noble Snowdeal, is named on the complaint, but he withdrew his claims before the court entered judgment in this case.

conspiracy to commit abuse of process and wrongful use of civil proceedings/malicious prosecution; (III) abuse of process in Maine proceedings; (IV) wrongful use of civil proceedings/malicious prosecution in Maine; (V) abuse of process in eighteen other jurisdictions; and (VI) wrongful use of civil proceedings/malicious prosecution in those eighteen jurisdictions.

[¶ 6] The Nader complaint alleged that MDP and Moffett took direct action, and conspired with others, to prevent Ralph Nader from appearing on the ballot as a candidate in the 2004 presidential election and deprive voters of the opportunity to vote for him. Nader alleged that MDP and Moffett attempted to accomplish these ends primarily by filing, and conspiring with others to file, twenty-nine "objectively baseless" complaints with courts and administrative bodies in seventeen states, including Maine, and with the Federal Election Commission (FEC) in the District of Columbia, all within a twelve-week period.[3] Nader alleged that the complaints challenged Nader's nomination papers and requested that Nader not be certified to run in the 2004 general election, but that MDP's and Moffett's actual and admitted purpose in filing the twenty-nine complaints was to "neutralize" the Nader campaign by distracting it and by draining it of money, time, and resources.

[¶ 7] The Nader complaint alleged that MDP's and Moffett's complaints were found to be baseless by a majority of the tribunals that considered the complaints, although it acknowledged that MDP and Moffett were successful in certain jurisdictions, at least at some stage of the proceedings. Nader's complaint, as well as subsequently submitted affidavits, contain numerous paragraphs alleging specific instances when MDP and Moffett acted and took coordinated actions with alleged co-conspirators for the sole purpose of harassing, distracting, and draining the resources from his campaign.

[¶ 8] With respect to the State of Maine, Nader alleged that MDP and Moffett filed two baseless complaints with the Secretary of State "raising technical objections to the form of [Nader's] nomination papers"; that the Secretary of State found the complaints lacked merit and dismissed them; and that MDP and Moffett exhausted all appeals to the Superior Court and to this Court, in which they were unsuccessful. *See Melanson v. Sec'y of State*, 2004 ME 127, 861 A.2d 641; *Melanson v. Dep't of the Sec'y of State*, 2004 WL 3196784, 2004 Me.Super. LEXIS 233 (Sept. 27, 2004).

[¶ 9] Finally, the Nader complaint alleged that Nader was damaged by MDP's and Moffett's actions by, among other things, being drained of time, money and other resources, being prevented from gaining ballot access in several states, and sustaining injury to Nader's financial resources and reputation.

[¶ 10] MDP and Moffett each filed motions to dismiss the Nader complaint pursuant to M.R. Civ. P. 12(b). MDP included with its motion to dismiss, and Moffett separately filed, a special motion to dismiss Nader's complaint pursuant to the anti-SLAPP statute, 14 M.R.S. § 556. Nader opposed the motions.

[¶ 11] The court held a hearing in November 2010 on the special motions to dismiss and entered a judgment granting MDP's and Moffett's special motions to dismiss. The court concluded that MDP and Moffett satisfied their initial burdens under the anti-SLAPP statute of showing that "their activity of challenging nomina-

---

**3.** Nader also alleges that MDP, Moffett, and their co-conspirators intervened in proceed-
ings to remove Nader from the ballot in Oregon.

tion petitions in several states is activity manifesting their right of petition under the" United States and Maine Constitutions and is protected by section 556. The court then concluded that Nader had failed to meet his burden of showing that "the Defendants' efforts in the 17 states and before the Federal Election Commission were devoid of any reasonable factual support or any arguable basis in law," even if MDP and Moffett often were not successful. Accordingly, the court granted MDP's and Moffett's special motions to dismiss pursuant to the anti-SLAPP statute and dismissed the Rule 12(b) motions as moot. Nader filed a timely notice of appeal from the court's judgment.

[¶ 12] Moffett filed a motion for costs and attorney fees pursuant to the anti-SLAPP statute, which Nader opposed.[4] On December 28, 2010, the court entered a four-page judgment granting Moffett's motion and awarding one dollar in fees and costs. The court stated that "[t]he broad interpretation and application of [the anti-SLAPP statute] by the Law Court, compels the decision [the court] reached" in its judgment. The court further stated, "But for the impact of legal authority in this State relating to 14 M.R.S. § 556, this [c]ourt is of the opinion that [Nader's] action warranted further analysis and development through the evolution of normal civil litigation process." The court thus concluded that "the special circumstances of this case" warranted a grant of fees and costs to Moffett, but that the same consid-

erations persuaded the court that an award of one dollar was appropriate. Moffett cross-appeals from the court's December 28, 2010, order.

## II. LEGAL ANALYSIS

### A. Anti–SLAPP Statute; Historical Interpretation and Application

[¶ 13] Title 14 M.R.S. § 556, known as Maine's anti-SLAPP statute, states in relevant part:

When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The court shall advance the special motion so that it may be heard and determined with as little delay as possible. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.[5]

---

4. Nader filed a notice of appeal on December 7, 2010, after Moffett filed a motion for attorney fees, but before the court ruled on Moffett's motion.

5. The anti-SLAPP statute further provides:

As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connec-

tion with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling

[¶ 14] The anti-SLAPP statute is designed to allow a defendant to file a special motion to dismiss a lawsuit that a plaintiff brings "with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs." *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226; *see also Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169 ("Section 556 was designed to combat litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants."); *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 ("Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPP [suits].").

[¶ 15] Pursuant to the language of section 556 and our case law, which the trial court attempted to follow, the application of the anti-SLAPP statute is a two-step process. At the first step, the court determines whether the anti-SLAPP statute applies. At this step, the moving party (i.e., the defendant) "carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government." *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d 1226; *see also Morse Bros.*, 2001 ME 70, ¶¶ 19–20, 772 A.2d 842. If the moving party fails to meet its burden at this step, the anti-SLAPP statute does not apply, and the special motion is denied. *See Schelling*, 2008 ME 59, ¶ 7, 942 A.2d 1226; *see also Wenger v. Aceto*, 451 Mass. 1, 883 N.E.2d 262, 266 (2008).

[¶ 16] If the moving party demonstrates that the suit is based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government, and therefore that the statute applies, the burden shifts to the nonmoving party to establish, through pleadings and affidavits, that the moving party's exercise of its right of petition (1) was "devoid of any reasonable factual support or any arguable basis in law," and (2) "caused actual injury" to the nonmoving party. 14 M.R.S. § 556; *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d 1226; *Morse Bros.*, 2001 ME 70, ¶ 20, 772 A.2d 842. If the nonmoving party fails to meet its burden at this second step of the analysis, the court must grant the special motion to dismiss. *See Maietta Constr.*, 2004 ME 53, ¶ 8, 847 A.2d 1169.

[¶ 17] The analysis a court may use to determine whether the nonmoving party has met its burden to establish that the moving party's action was devoid of any reasonable factual support or any arguable basis in law and caused actual injury is not specified in the anti-SLAPP statute. In our precedents addressing the nonmoving party's efforts to meet its statutory burden, we have reviewed "the evidence in the light most favorable to the moving party because the responding party bears the burden of proof when the statute applies." *Id.*; *Morse Bros.*, 2001 ME 70, ¶ 18, 772 A.2d 842. Application of this standard becomes problematic when the "evidence" to be viewed most favorably to the moving party is disputed and consists only of pleadings and statements in affidavits not yet subject to discovery or trial.

B. Statutory Construction with Constitutional Issues Implicated

[¶ 18] We have interpreted the anti-SLAPP statute only a few times since its

---

within constitutional protection of the right to petition government.

14 M.R.S. § 556.

1995 enactment by P.L.1995, ch. 413, § 1 (effective Sept. 29, 1995). *See Schelling,* 2008 ME 59, 942 A.2d 1226; *Maietta Constr.,* 2004 ME 53, 847 A.2d 1169; *Morse Bros.,* 2001 ME 70, 772 A.2d 842. We have striven to interpret the anti-SLAPP statute in accordance with its plain language. *See Driscoll v. Mains,* 2005 ME 52, ¶ 6, 870 A.2d 124 ("When construing a statute, we look to its plain meaning and try to give effect to the legislative intent.").

[¶ 19] When constitutional rights are implicated in the application of a statute, another rule of statutory construction holds that we must construe a statute to preserve its constitutionality, or to avoid an unconstitutional application of the statute, if at all possible. *See Rideout v. Riendeau,* 2000 ME 198, ¶ 14, 761 A.2d 291. Thus, when there is a reasonable interpretation of a statute that will satisfy constitutional requirements, we will adopt that interpretation, *Driscoll,* 2005 ME 52, ¶ 6, 870 A.2d 124, notwithstanding other possible interpretations of the statute that could violate the Constitution, *see Rideout,* 2000 ME 198, ¶ 14, 761 A.2d 291; *Bossie v. State,* 488 A.2d 477, 479 (Me.1985) (stating that "this Court is bound to avoid an unconstitutional interpretation of a statute if a reasonable interpretation of the statute would satisfy constitutional requirements").

[¶ 20] This appeal requires us to interpret and apply the anti-SLAPP statute against a backdrop of several constitutional rights that are implicated by Nader's claims.[6] These rights include the right to petition, the right of access to the courts, and the right of access to the ballot for candidates and voters.

1.  The Right to Petition

[¶ 21] The right to petition the government, including the right to file complaints in courts, is a fundamental right protected by the First Amendment. *See* U.S. Const. amend. I; *Borough of Duryea v. Guarnieri,* 564 U.S. ——, 131 S.Ct. 2488, 2491, 2494, 180 L.Ed.2d 408 (2011) ("Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.' "); *McDonald v. Smith,* 472 U.S. 479, 482, 484–85, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).[7] The right to petition is one of "the most precious of the liberties safeguarded by the Bill of Rights" and is made applicable to the states by the Fourteenth Amendment. *United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Virginia v. Black,* 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). This right belongs not just to MDP and Moffett in their petitioning of the courts and state agencies as alleged in the underlying complaint, but to Nader in petitioning the court to seek redress for alleged injuries to his right to participate in elections and to voters' rights to have the opportunity to

6.  We were not required in *Schelling,* our most recent anti-SLAPP opinion, to interpret the statute's language under consideration in this opinion. *Schelling v. Lindell,* 2008 ME 59, ¶¶ 2, 27 & n. 5, 942 A.2d 1226.

7.  The First Amendment states, in relevant part: "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."

The Maine Constitution, article I, § 15, provides: "The people have a right at all times in an orderly and peaceable manner to assemble to consult upon the common good, to give instructions to their representatives, and to request, of either department of the government by petition or remonstrance, redress of their wrongs and grievances."

vote for the qualified candidate of their choice. These rights, Nader alleges, were diminished or eliminated as a result of MDP's and Moffett's petitioning activities.[8]

[¶ 22] When interpreting the Massachusetts anti-SLAPP statute, which contains provisions nearly identical to 14 M.R.S. § 556, *see Morse Bros.*, 2001 ME 70, ¶ 15, 772 A.2d 842, the Massachusetts Supreme Judicial Court recognized the conflicting rights to petition inherent in the statute, stating:

> Despite the apparent purpose of the anti-SLAPP statute to dispose expeditiously of meritless lawsuits that may chill petitioning activity, the statutory language fails to track and implement such an objective. By protecting one party's exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged in sham petitioning.

*Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 691 N.E.2d 935, 943 (1998).[9] As we interpret the language of the anti-SLAPP statute applicable to the second step of our anti-SLAPP analysis, we must keep in mind the conflicting rights to petition implicated by the statute.

## 2. The Right of Access to the Courts

■■ [¶ 23] The right of access to the courts is a right protected in the Maine Constitution and recognized under the United States Constitution. The Maine Constitution provides a right of redress through the courts for injuries, stating, "Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. art. I, § 19. This "open courts" provision "means the courts must be accessible to all persons alike without discrimination, at times and places designated for their sitting, and afford a speedy remedy for every wrong recognized by law as remediable in a court." *Maine Med. Ctr. v. Cote*, 577 A.2d 1173, 1176 (Me.1990).

■ [¶ 24] The substantive right of access to the courts is also " 'one of the fundamental rights protected by the [United States] Constitution.' " *Webb v. Haas*, 1999 ME 74, ¶ 10, 728 A.2d 1261 (considering whether an officer reasonably should have known that the coverup of a violation

---

**8.** Notably, although Nader's complaint alleges claims for injury to the plaintiffs, the underlying issues—access to the political process for minor-party candidates, preventing major parties from excluding minor-party candidates from entering the political discourse—are arguably of interest to the community as a whole. *See Borough of Duryea v. Guarnieri*, 564 U.S. ——, 131 S.Ct. 2488, 2498, 180 L.Ed.2d 408 ("Petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole.").

**9.** The *Duracraft* opinion addressed this potential constitutional infirmity in the Massachusetts statute by interpreting the phrase "based on" in its statute as requiring that the moving

party show at the first step of the anti-SLAPP analysis that the plaintiff's claims against him are " 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 691 N.E.2d 935, 943 (1998). We have implicitly, if not explicitly, adopted this interpretation of our anti-SLAPP statute as well, *see Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 19, 772 A.2d 842 (*citing Donovan v. Gardner*, 50 Mass.App.Ct. 595, 740 N.E.2d 639, 642 (2000)), but we consider whether applying this interpretation alone, without more, is sufficient to preserve the constitutionality of Maine's anti-SLAPP statute as applied in this case when constitutional rights are implicated.

of police procedure deprived the plaintiffs of their Constitutional right of access to the courts by interfering with their ability to bring state law actions against perpetrators of a crime); *see Ryland v. Shapiro*, 708 F.2d 967, 971–72 (5th Cir.1983); *see also* U.S. Const. Amend. I.

[¶ 25] The right of access to the courts has also been recognized as a substantive right applicable to plaintiffs in civil actions under the Due Process Clause of the Fourteenth Amendment.[10] *Boddie v. Connecticut*, 401 U.S. 371, 379, 382–83, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (holding that a court filing fee requirement precluded welfare recipients' access to courts to file complaints for divorce in violation of their due process rights under the Fourteenth Amendment); *Ryland*, 708 F.2d at 971–73.

3. Right of Access to the Ballot

▬▬▬ [¶ 26] "Restrictions on access to the ballot burden two distinct and fundamental rights, the right of individuals to associate for the advancement of political

beliefs [under the First Amendment], and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *see Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986). "These fundamental rights are implicated most clearly where minor-party access to the ballot is restricted." *Munro*, 479 U.S. at 200, 107 S.Ct. 533 (Marshall, J., dissenting).[11]

[¶ 27] Nader's complaint alleges that the restriction on his access to the ballot was the result of improper action by private parties rather than by state action, although those private parties did avail themselves of state action and court access in order to, allegedly, challenge and obstruct Nader's access to ballots. Regardless, Nader's right of access to the ballot is implicated in, and forms an essential basis for, his complaint.

---

10. The United States Supreme Court has recognized that the basis of the right of access to courts is not fully settled, noting that its decisions have grounded that right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. *Christopher v. Harbury*, 536 U.S. 403, 413–14, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (noting two categories of denial of access to courts cases: cases involving (1) systemic official action that presently denies an opportunity to litigate for a class of potential plaintiffs, and (2) a specific official act that, among other things, may "have caused the loss or inadequate settlement of a meritorious case").

11. Though recognizing that "the right to vote is fundamental" and that "[a] restriction on candidacy implicates a fundamental right ... 'if the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity,'" the United States Supreme

Court has declined to apply a strict scrutiny test universally, but has instead adopted a balancing approach that requires a court to identify and evaluate the interests put forth as justification for the burden imposed on a political party's access to the ballot. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190–91, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008); *Grizzle v. Kemp*, 634 F.3d 1314, 1321–22 (11th Cir.2011) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 793, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) and citing *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)). However, no matter how "slight" the burden may appear, any burden "that a state law imposes on a political party, an individual voter, or a discrete class of voters ... must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford*, 553 U.S. at 191, 128 S.Ct. 1610; *see Anderson*, 460 U.S. at 794, 103 S.Ct. 1564 ("[I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest.").

## C. Interpretation and Application of the Anti–SLAPP Statute to this Case

[¶ 28] There is no dispute that at the first step of the anti-SLAPP statute analysis, the moving parties, MDP and Moffett, demonstrated that Nader's claims against them are based on MDP's and Moffett's exercise of the right of petition. 14 M.R.S. § 556; *Schelling*, 2008 ME 59, ¶¶ 11–12, 942 A.2d 1226 ("As is clear from the language of section 556, the Legislature intended to define in very broad terms those statements that are covered by the statute.").[12]

[¶ 29] We focus our analysis, therefore, on the second step of the anti-SLAPP analysis: whether Nader met his burden to establish that MDP's and Moffett's exercise of their right of petition "was devoid of any reasonable factual support or any arguable basis in law" and "caused actual injury" to Nader. 14 M.R.S. § 556. As we have interpreted section 556, if both the moving party (generally a defendant) and the nonmoving party (generally a plaintiff) present conflicting facts, the nonmoving party will always lose because the court must view the evidence in the light most favorable to the moving party. *See Maietta Constr.*, 2004 ME 53, ¶ 8, 847 A.2d 1169; *Morse Bros.*, 2001 ME 70, ¶ 18, 772 A.2d 842. This has sometimes been referred to as a "converse summary-judgment-like standard." *See* John G. Osborn & Jeffrey A. Thaler, *Maine's Anti–SLAPP Law: Special Protection Against Improper Lawsuits Targeting Free Speech and Petitioning*, 23 Me. Bar J. 32, 37 (2008).

[¶ 30] Applying this "converse summary-judgment-like standard" makes the special motion to dismiss unlike the other primary procedural mechanisms for early disposition of claims. In both motions to dismiss pursuant to M.R. Civ. P. 12(b)(6) and motions for summary judgment pursuant to M.R. Civ. P. 56, the trial court views the pleadings and evidence in the light most favorable to the nonmoving party, just as we do in reviewing such matters. *See Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. If the party with the burden on the dispositive motion (the party seeking dismissal or judgment without trial) fails to meet it, the result is a trial. However, when applying

---

**12.** Nader argues that the First Amendment to the Constitution protects as "petitioning activity" only petitioning activity that is not knowingly baseless or false, and that it was MDP's and Moffett's burden at the first step of the anti-SLAPP analysis to establish not only that Nader's claims are based on their petitioning activity, i.e., their complaints, but that their complaints were protected under the First Amendment despite being knowingly false, baseless, and filed with the intent to cause injury, to sabotage, and to harass Nader.

We conclude that Nader's construction of the language "based on the moving party's exercise of the moving party's right of petition under the [United States or Maine] Constitution[s]" is at odds with section 556 and our case law. Rather, even if MDP's and Moffett's complaints are shown to have been baseless, the United States Supreme Court has suggested, in dicta, that it has "never held that the entire class of objectively baseless litigation may be enjoined or declared unlawful even though such suits may advance no First Amendment interests of their own." *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 526–27, 531, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (stating that, while "baseless litigation is not immunized by the First Amendment right to petition," "it does not suggest that the class of baseless litigation is *completely* unprotected"); *see California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511, 513, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (holding that a party has a right of petition protected by the First Amendment to access agencies and courts challenging applications sought by a competitor; whether that petitioning activity would ultimately be shown to violate antitrust laws as "sham" petitioning remained to be established).

the special motion to dismiss, pursuant to our precedent interpreting section 556, if the party with the burden at step two (the nonmoving party, generally the plaintiff) fails to meet its burden, the result is no trial and dismissal of the action.

[¶ 31] This standard, which requires the court to view evidence in the light most favorable to the moving party, is a creature of case law. It does not appear in the language of the statute. Section 556 requires, at step two, only that the plaintiff shows "that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." Section 556 further provides: "In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

[¶ 32] The converse summary-judgment-like standard first appeared in *Morse Brothers, Inc. v. Webster*, in the context of appellate review. 2001 ME 70, ¶ 18, 772 A.2d 842. The standard was later applied in *Maietta Construction, Inc. v. Wainwright*, 2004 ME 53, ¶ 8, 847 A.2d 1169 ("[T]his evidence is viewed most favorably to the moving party. . . .").

[¶ 33] A plain reading of section 556 does not dictate the converse summary-judgment-like standard, and it is this standard, not section 556, that burdens the constitutional rights at issue. To avoid an unconstitutional application of the law, as our rules of statutory interpretation require us to do, section 556 must be construed, consistent with usual motion-to-dismiss practice, to permit courts to infer that the allegations in a plaintiff's complaint

and factual statements in any affidavits responding to a special motion to dismiss are true.[13] This standard, consistent with other dispositive motion practice, requires only that the nonmoving party provide prima facie evidence to support its burden of showing that the moving party's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." 14 M.R.S. § 556.

[¶ 34] We recently described the prima facie evidence standard as

the preliminary burden of production of evidence; it requires proof only of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor. Prima facie evidence requires only some evidence on every element of proof necessary to obtain the desired remedy. Thus, prima facie proof is a low standard that does not depend on the reliability or credibility of the evidence, all of which may be considered at some later time in the process.

*Cookson v. State*, 2011 ME 53, ¶ 8, 17 A.3d 1208 (internal citations omitted).

[¶ 35] A plaintiff may meet its burden of proof responding to a special motion to dismiss if, through "the pleading and supporting and opposing affidavits," 14 M.R.S. § 556, the plaintiff presents "some evidence" that the defendant's petitioning activity was devoid of factual or legal support and caused actual injury. Even when faced with conflicting evidence from a defendant, a plaintiff able to meet this "low standard" could avoid dismissal of his or her claim.

---

13. Pursuant to M.R. Civ. P. 11(a), a signature on a complaint "constitutes a representation by the signer that the signer has read the pleading . . .; that to the best of the signer's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

[¶ 36] Accordingly, today we announce a change in the parties' burdens at the preliminary anti-SLAPP dismissal stage. Upon a special motion to dismiss, a nonmoving party's action or claim should be allowed to proceed unless the nonmoving party, here Nader, by pleading or affidavits, fails to make a prima facie showing that any, rather than all, of the petitioning activities by the moving parties, here MDP and Moffett, necessarily including here MDP's and Moffett's actions in Maine, were devoid of any reasonable factual support or arguable basis in law. *See Morse Bros.*, 2001 ME 70, ¶ 21, 772 A.2d 842 (leaving open the question of whether a nonmoving party can sustain its burden if some but not all of the moving parties' petitioning actions were devoid of merit).

[¶ 37] If Nader fails to make a prima facie case that any of MDP's and Moffett's petitioning activities in any other state or states were devoid of any reasonable factual support or arguable basis in law, the claims regarding actions in those states where no prima facie case is demonstrated would be dismissed.[14] If Nader fails to make a prima facie case that any of MDP's and Moffett's petitioning activities in Maine were devoid of any reasonable factual support or arguable basis in law, the action must be dismissed, as there would be no basis for the courts of the State of Maine to assert jurisdiction over actions that occurred only in other states.

[¶ 38] We therefore remand this matter for the trial court to reapply the statute at the second step of the anti-SLAPP analysis, including making a determination as to whether Nader can present sufficient evidence to make a prima facie showing that any of MDP's and Moffett's petitioning activities, including actions in Maine, were devoid of any reasonable factual support or any arguable legal basis and resulted in actual injury to him. Actual injury could include, as alleged in Nader's complaint, quantifiable losses of money or other resources or identifiable special damages. An abuse of process claim would also require a prima facie showing of two elements: (1) "the use of process in a manner improper in the regular conduct of the proceeding," and (2) "the existence of an ulterior motive." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 23, 901 A.2d 189.

[¶ 39] Because we vacate the court's judgment granting MDP's and Moffett's special motions to dismiss and remand for further proceedings, we also vacate the court's judgment awarding Moffett attorney fees and costs.

The entry is:

Judgment granting MDP's and Moffett's special motions to dismiss is vacated. Judgment granting Moffett's motion for attorney fees and costs is vacated. Remanded for further proceedings consistent with this opinion.

SILVER, J., with whom JABAR, J., joins, concurring.

[¶ 40] I concur in the result reached by the majority in this case, and with the Court's decision to reallocate and lower the burdens applicable in anti-SLAPP cases in order to restore balance to the competing constitutional rights implicated by this statute. I write separately because Maine's anti-SLAPP statute raises serious concerns regarding the right to equal protection under the law, to petition the gov-

14. Because this action was dismissed at a very early stage, there has not yet been opportunity to examine the facts and the law regarding jurisdiction of the courts of the State of Maine to address issues regarding petitioning activity that occurred before courts and administrative agencies in other jurisdictions. We express no opinion on that issue.

ernment for redress of grievances, and to open courts. I also write to express my belief that in order to avoid the potentially fatal constitutional implications of the statute as written, the Court must continue to view this statute as a procedural mechanism consistent with other dispositive motions rather than as a substantive burden on a plaintiff's ability to bring a valid cause of action.

[¶ 41] We have long interpreted the "open courts" provision of the Maine Constitution to guarantee a right of access to the courts "to all persons alike without discrimination," limited only by the Legislature's "reasonable *procedural* requirements for exercising the right to an adjudication." *Godbout v. WLB Holding, Inc.*, 2010 ME 46, ¶¶ 6–7, 997 A.2d 92 (emphasis added). We have held that statutes of limitation, *e.g.*, *id.* ¶¶ 7–8, and medical malpractice screening panels, *Irish v. Gimbel*, 1997 ME 50, ¶ 18, 691 A.2d 664, are the type of reasonable, constitutionally-permissible procedural limitations on a plaintiff's ability to bring a cause of action. Procedural mechanisms are designed to weed out meritless claims or lawsuits and prevent stale claims from being brought.

[¶ 42] The special motion to dismiss created by the anti-SLAPP statute is intended to do the same thing: to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right to petition the government, and to do so at an early stage before the defendant incurs great expense. *See Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169. California was one of the first states to enact modern anti-SLAPP legislation, and it did so in response to a growing trend of deep-pocketed developers effectively silencing public opposition to development projects with the threat or pursuit of resource-draining but ultimately baseless litigation. *See generally Dixon v. Superior Court*, 30 Cal. App.4th 733, 741, 36 Cal.Rptr.2d 687 (Cal. Ct.App.1994).

[¶ 43] Maine adopted the Maine Health Security Act (MHSA), 24 M.R.S. §§ 2501–2987 (2011), for a similar reason. A "national crisis" in the availability and cost of medical malpractice insurance was occurring, which had caused an increase in medical malpractice insurance rates in Maine. *Saunders v. Tisher*, 2006 ME 94, ¶ 15, 902 A.2d 830 (quoting *Butler v. Killoran*, 1998 ME 147, ¶¶ 9–10, 714 A.2d 129). The Legislature appointed a commission to develop "a more equitable system of relief for malpractice claims," and the screening panels were created as part of this system. *Id.* They are designed as a procedural mechanism that screens out and deters meritless malpractice claims and encourages pretrial settlement. *See* 24 M.R.S. § 2851; *Irish*, 1997 ME 50, ¶ 13, 691 A.2d 664. As a deterrent to baseless litigation, the statute also requires admission of panel findings at trial when the panel unanimously determines that a plaintiff or defendant possesses a meritless claim or defense. 24 M.R.S. § 2857; *Irish*, 1997 ME 50, ¶ 13, 691 A.2d 664. Although medical malpractice plaintiffs have challenged this statute as a violation of the equal protection clause, we have upheld this statute as a *procedure* that is rationally related to a legitimate state interest. *See Irish*, 1997 ME 50, ¶ 19, 691 A.2d 664.

[¶ 44] Although the anti-SLAPP statute seeks to serve the same purpose as the MHSA, it differs significantly in two very important ways. First, the Legislature did not identify the existence of any crisis in Maine to justify imposing an additional burden on a certain class of plaintiffs. Our Legislature was silent as to its reasons for adopting Maine's anti-SLAPP statute, in contrast to its clear articulation

of the need for the MHSA and its reasons for adopting that statute. *Cf. Saunders*, 2006 ME 94, ¶ 15, 902 A.2d 830 (noting that the legislative history of the MHSA is "well documented" and describing the specific need for it in Maine).

[¶ 45] The lack of a need for this statute in Maine is evidenced by the fact that it has rarely, if ever, been invoked by a citizen group or individual private citizens who seek to avail themselves of the protections of the statute against a resource-draining lawsuit. Instead, the statute has consistently been used between parties such as business partners, *see DeSimone v. MacQuinn–Tweedie*, 2003 WL 21018852, 2003 Me.Super. LEXIS 56 (Mar. 24, 2003); employers and employees, *see Clemetson v. Sweetser, Inc.*, 2011 Me.Super. LEXIS 217 (Nov. 4, 2011); and divorcing spouses, *see, e.g., Pylypenko v. Copp*, 2011 WL 1338088, 2011 Me.Super. LEXIS 13 (Feb. 23, 2011). The only time the statute has been invoked in Maine by the type of parties for whom it was intended, the Superior Court dismissed the claims of a group of citizens who challenged statements made by various gas company representatives before governmental entities, which the citizens alleged were known by the company to be false. *See Millett v. Atlantic Richfield Co.*, 1999 Me.Super. LEXIS 240, *8–*9 (Aug. 30, 1999) (noting that "[t]he plain language of the statute does not limit its application to certain classes of defendants" and that defendants' motive "in exercising their right to petition is irrelevant to whether their exercise is protected"). Therefore, not only has this statute been used by different parties than those intended, but it has served an entirely different purpose than the one intended. The "Goliath" who abuses other forms of petitioning to harass "David" has now adopted the special motion to dismiss as another obstacle to throw in David's path when he legitimately seeks to petition the court for redress. *See* Cal.Code Civ. Proc. § 425.17 (2003) (shielding public interest plaintiffs from the special motion due to "disturbing abuse" of the anti-SLAPP statute).

[¶ 46] The second way the anti-SLAPP statute differs from the MHSA is that the statute's plain language "substantively alters the type of harm actionable—that is, plaintiff must show the defendant's conduct resulted in actual injury to the plaintiff." *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir.2010) (quotation marks omitted). Unlike our interpretation of the MHSA, our interpretation of the "actual injury" prong has amplified the substantive nature of this requirement. In *Schelling v. Lindell*, 2008 ME 59, 942 A.2d 1226, for example, the Court required the plaintiff to prove that she had suffered compensable emotional injury in order to survive the anti-SLAPP special motion to dismiss. *Id.* ¶¶ 16–20. Had the plaintiff's cause of action for defamation been based on something other than the defendant's petitioning activity, damages would have been presumed and the plaintiff would not have been required to prove actual injury in order to survive a dispositive motion. The Court was compelled to dismiss the complaint, despite the claim being otherwise valid, brought in good faith, and capable of succeeding, because the plaintiff could not demonstrate "actual injury" as required by the anti-SLAPP statute. *Id.* ¶ 27; *see also Maietta Constr.*, 2004 ME 53, ¶¶ 9–10, 847 A.2d 1169 (rejecting plaintiff's assertion that damages per se constitute actual damages).

[¶ 47] Clearly, the statute is capable of functioning as more than a procedural barrier to test the validity or likelihood of success of a potentially meritless cause of action. Because of the way the statute has been misused with respect to its intended purpose, treating it as a substantive abro-

gation of common law claims has become very problematic; it serves to bar legitimate, valid claims that are brought by plaintiffs in good faith, regardless of whether a plaintiff would be able to meet her burden on a motion to dismiss or for summary judgment. While the Legislature may have the *authority* to do so, there is no indication that it *intended* to do so. *See State Farm Mut. Auto. Ins. Co. v. Koshy,* 2010 ME 44, ¶ 34, 995 A.2d 651 (stating that an ambiguous statute will only be read in derogation of the common law if the legislative history demonstrates the Legislature's intent to do so). There is no need, then, for the statute to be interpreted in this way. Given that the statute is meant to protect the party who is validly exercising his right to petition, it is inconsistent with the Legislature's intent to interpret this statute in a way that enables it to be used against the very parties it was designed to protect. *See Rich v. Dep't of Marine Res.,* 2010 ME 41, ¶ 7, 994 A.2d 815 ("Our primary purpose in interpreting a statute is to give effect to the intent of the Legislature." (quotation marks omitted)).

[¶ 48] More importantly, abrogating common law causes of action *only for certain plaintiffs*—plaintiffs who seek to challenge certain activities—presents a serious constitutional issue. Interpreting the statute to subject certain plaintiffs to an evidentiary burden that is higher than that borne by other similarly-situated plaintiffs invites violations of plaintiffs' rights to equal protection of the law pursuant to article 1, section 6–A of the Maine Constitution. A plaintiff with a cause of action for defamation, for example, is deprived of her right to petition the court for redress only when the action that caused her injury was a form of petitioning, even sham petitioning. This amounts to a distinction among and differing treatment of identical plaintiffs with identical harms and causes

of action. When one plaintiff is able to pursue her cause of action and the other is not, equal protection of the law is implicated.

[¶ 49] Our reasoning in defense of the MHSA does not apply here. We have upheld that statute on the basis that a plaintiff does not have a fundamental right to bring a particular cause of action. *See Irish,* 1997 ME 50, ¶ 19, 691 A.2d 664; *Choroszy v. Tso,* 647 A.2d 803, 808 (Me. 1994); *Me. Med. Ctr. v. Cote,* 577 A.2d 1173, 1177 (Me.1990). Accordingly, enacting a procedure to which only medical malpractice plaintiffs are subjected does not violate equal protection because doing so is rationally related to a legitimate state interest. *Irish,* 1997 ME 50, ¶ 19, 691 A.2d 664. The anti-SLAPP statute, in contrast, does implicate fundamental rights, Majority Opinion ¶¶ 21, 24 (noting that the right to petition and the right of access to the courts are fundamental rights), and curtailing those rights is not justified by the compelling need that supported enactment of the MHSA. The anti-SLAPP statute also distinguishes between plaintiffs with identical causes of action, which was not a concern pursuant to the MHSA. Hence, the anti-SLAPP statute is more problematic and less defensible than the MHSA in terms of equal protection.

[¶ 50] In addition, interpreting the statute to create an additional, substantive burden that authorizes the dismissal of legitimate causes of action brought in good faith may deprive plaintiffs of their fundamental rights of access to the courts and to petition the government for redress guaranteed by the United States Constitution. *See Duracraft Corp. v. Holmes Prods. Corp.,* 427 Mass. 156, 691 N.E.2d 935, 943 (1998) ("By protecting one party's exercise of its right to petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of

its right to petition, even when it is not engaged in sham petitioning."). The imposition of a substantive, rather than a procedural, burden also appears to violate the open courts provision of the Maine Constitution. *See* Me. Const. art. I, § 19; *cf. Godbout*, 2010 ME 46, ¶¶ 6–7, 997 A.2d 92.

[¶ 51] The Court is forced to walk a precarious line when the Legislature attempts to protect the fundamental constitutional rights of some parties by limiting the same rights of other parties. I share the view of the Massachusetts Appeals Court that "literal application of the statutory test and procedure ... create[s] grave constitutional problems where, as here, the plaintiff's action asserts a legitimate, cognizable claim." *Duracraft*, 691 N.E.2d at 943 n. 19 (quotation marks omitted). However well-intentioned, the approach of the statute is confounding and ill-suited to its purpose.[15] The analytic

acrobatics necessary here to reconcile the Constitution with the language of the statute and with our previous interpretations of it indicates that, as written, this statute presents serious constitutional questions.

[¶ 52] I commend the Court's painstaking effort to strike the appropriate balance in this case and I believe that it has achieved the right result. I find it necessary to emphasize, however, that the only way to avoid the constitutional implications of this statute is to continue to treat the special motion to dismiss as a procedural, dispositive motion, as the Court has done in this case.

---

**15.** Twenty-nine states currently have anti-SLAPP legislation, but just three other states—Massachusetts, Arizona, and Vermont—have statutes similar to Maine's. Anti-SLAPP statutes in nine states—Arkansas, California, Delaware, Florida, Georgia, Hawaii, Louisiana, New York, and Oregon—directly address the merit of the plaintiff's claim. *See* Public Participation Project, *State Anti-SLAPP Laws*, http://www.anti-slapp.org/your-states-free-speech-protection (last visited April 9, 2012).