STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-123

NORMAN GAUDETTE, et al.,

Plaintiffs,

v.

**ORDER**

MAINELY MEDIA, LLC, et al.,

Defendants,

## I.    Background

### A. Procedural Posture

Plaintiffs Norman and Joan Gaudette bring this action against defendants Mainely Media, LLC, Benjamin Meiklejohn, and Molly Lovett-Keeley alleging counts for defamation and other claims related to a series of newspaper articles defendants published. Norman and Joan are husband and wife. Mainely Media owns and operates a number of local newspapers in Southern Maine, including the Biddeford-Saco-Old Orchard Beach Courier, the Kennebunk Post, the South Portland-Cape Elizabeth Sentry, and the Scarborough Leader. Lovett-Keeley is an editor and Meiklejohn is a contributor who authored several articles published by Mainely Media at issue in this case.

Before the court is the defendants' special motion to dismiss the plaintiffs' claims under Maine's anti-Strategic Lawsuits Against Public Participation ("SLAPP") statute.

1

## B. Facts

The following facts are drawn from the complaint and affidavits filed in support of and opposition to the special motion to dismiss.

Norman Gaudette was employed as a detective and captain in the Biddeford Police Department from 1973 until 2001. In 1990, allegations surfaced that Gaudette sexually abused several young boys. The Biddeford P.D. and the Attorney General's Office investigated the claims, but did not pursue criminal charges. In 1991, evidence regarding allegations of abuse by a third young boy was presented to a grand jury. The grand jury returned a no bill.

The history of sexual abuse by former Biddeford P.D. officers has recently resurfaced publicly in the media and become a subject of inquiry by state and local officials. Beginning in April 2015, Mainely Media newspapers have published and re-published a series of articles about sexual abuse allegedly committed by former police officers in the Biddeford P.D., including Gaudette. The complaint specifically recites excerpts from articles published by the defendants on April 6, April 9, May 14, May 21, June 11, June 12, and June 18, and alleges they contained a number of defamatory distortions and falsehoods about the allegations against Gaudette and the handling of investigations by the Biddeford P.D. and Attorney General's Office.

Meikeljohn began investigating and interviewing persons about sexual abuse at the Biddeford P.D. after Matthew Lauzon, an alleged victim of former officer Christopher Dodd, posted on social media about the abuse in February 2015. Meikeljohn worked with Lovell-Keeley to piece together victim accounts and interviews persons with knowledge about allegations surrounding Dodd and Gaudette. Lovell-Keeley and

2

Meikeljohn interviewed several former Biddeford P.D. officers who interviewed alleged victims of Gaudette when allegations first surfaced. Lovell-Keeley also separately interviewed Larry Oullette, one of the victims. Meikeljohn and Lovell-Keeley relied on information obtained from the interviews to compose the articles. They both maintain they believed their coverage of the Dodd and Gaudette allegations would be reasonably likely to encourage consideration or review of the allegations by a government entity and would enlist public participation to effect consideration. The Biddeford City Council considered a proposal to place Biddeford Police Chief Roger Beaupre and Deputy Chief Joanne Fisk on paid administrative leave pending the Attorney General's investigation into allegations against Dodd.

## II. Discussion

### A. The Anti-SLAPP Framework

Maine's anti-Strategic Lawsuits Against Public Participation ("SLAPP") statute provides:

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556. "The anti-SLAPP statute is designed to allow a defendant to file a special motion to dismiss a lawsuit that a plaintiff brings with the intention of chilling or

3

deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs." *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 14, 41 A.3d 551 (internal citation omitted).

As laid out by the statute above, deciding a special motion to dismiss follows a two-step analysis. The court must first determine whether the statute applies. The party moving to dismiss "carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government." *Nader*, 2012 ME 57, ¶ 15, 41 A.3d 551. If the movant carries this burden, the court proceeds to the second step. At this step, the burden shifts to the non-moving party "to establish, through pleadings and affidavits, that the moving party's exercise of its right of petition (1) was 'devoid of any reasonable factual support or any arguable basis in law,' and (2) 'caused actual injury' to the nonmoving party." *Id.* ¶ 16 (citations omitted).

## B. The First Step: Whether the Statute Applies

The defendants "carr[y] the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant[s'] First Amendment right to petition the government." *Nader*, 2012 ME 57, ¶ 15, 41 A.3d 551. The anti-SLAPP statute defines the right to petition in part as "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration." 14 M.R.S. § 556. In the handful of cases construing the statute, the Law Court has taken an unequivocally broad view of statements considered petitioning activity. *Schelling v. Lindell*, 2008 ME 59, ¶ 12, 942

4

A.2d 1226 ("As is clear from the language of section 556, the Legislature intended to define in very broad terms those statements that are covered by the statute.") (citing *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169).

The defendants have adduced sufficient evidence that their statements are covered by the statute. Defendants have presented affidavits stating that they published the articles containing allegations against Gaudette believing them reasonably likely to encourage a government entity (i.e., the Biddeford City Council, Biddeford P.D., or Attorney General's Office) to consider the issue of sexual abuse allegations. (Meikeljohn Aff. ¶¶ 39-41; Lovell-Keeley Aff. ¶¶ 46-48.) Media attention has in fact prompted state and local officials to consider these issues in several public forums.

The parties primarily dispute whether a media defendant may employ Maine's anti-SLAPP statute to dismiss a defamation suit in these circumstances. The Law Court has yet to squarely consider the issue. Two Superior Court cases have followed Massachusetts in holding that Maine's anti-SLAPP statute does not apply unless the moving parties establish they engaged in the petitioning activity on their own behalf. *See Warren v. Preti, Flaherty, Beliveau & Pachios, LLC*, No. CV-11-28, 2012 Me. Super. LEXIS 89, *63 (Mar. 12, 2012) (predicting "the Law Court would limit the protection afforded by the Maine anti-SLAPP statute to statements or activities made in the moving party's exercise of its *own right* to petition") (emphasis added); *Demeuse v. WGME, Inc.*, No. CV-09-618, 2010 Me. Super. LEXIS 63, *20 (May 4, 2010).

In *Demeuse*, the Superior Court (Crowley, J.) held that the anti-SLAPP statute was not available to a television station that ran an allegedly defamatory story about a veterinarian because the station ran the story on behalf of a dog owner. 2010 Me. Super.

5

LEXIS 63 at *20. As such, the statements were not made in furtherance of the station's own First Amendment right to petition the government and thus the anti-SLAPP statute did not apply. Justice Crowley further noted the statute was "not intended to protect the news media, or its representatives, who have an independent responsibility to report news accurately." *Id.*

Under the rule expressed in *Demeuse* and *Warren*, media defendants, such as the defendants here, would not be permitted to claim the protection of the anti-SLAPP statute where the media defendants merely speak on behalf of third parties or report about issues of public interest or concern. Both cases relied upon case law from Massachusetts, which has an anti-SLAPP statute with practically identical language. *Compare* M.G.L. c. 231, § 59H ("In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss."), *with* 14 M.R.S. § 556 ("When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss.")

The Massachusetts Supreme Judicial Court has repeatedly held that in order for the anti-SLAPP statute to apply, the petitioning activity must be based on the party's own rights based on a narrow construction of the statutory language:

> We read the phrase "based on said party's exercise of its right of petition under the constitution" as restricting the statute's coverage to those defendants who petition the government on their own behalf. In other

6

words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens.

*Kobrin v. Gastfriend*, 821 N.E.2d 60, 64 (Mass. 2005); *see also Fustolo v. Hollander*, 920 N.E.2d 837, 841 (Mass. 2010).

The foregoing case law is persuasive. Additionally, from a policy perspective, there are good reasons media defendants should not be permitted to utilize anti-SLAPP when publishing articles about public controversies. For one, the media already has First Amendment protections under traditional defamation law. *See Fustolo*, 920 N.E.2d at 844 ("There is no reason to stretch the anti-SLAPP statute beyond its appropriate boundaries in order to create a level of protection for reporters beyond that to which they are currently entitled under the existing defamation law.") Much of the Meikeljohn and Lovell-Keeley affidavits summarize the sources relied upon and their belief in the truth of the accounts they reported. This testimony will likely be important to defenses to the plaintiffs' claims, but have no bearing upon whether these defendants or the media in general should receive protections beyond those enshrined in First Amendment law. Policy weighs against holding that the statute applies.

Yet the existing Law Court precedents have not followed the same strict construction employed by Massachusetts. Instead, the Law Court has repeatedly emphasized the "broad construction" employed to construe petitioning activity and accordingly applied the statute "liberally." *Schelling v. Lindell*, 2008 ME 59, ¶ 12, 942 A.2d 1226. This breadth and liberality applies not only to the statements considered petitioning activity, but also appears to apply to the parties that invoke the statute. In *Maietta*, for example, the Court affirmed the trial court's holding that the defendant's attorney could utilize the statute to dismiss the suit, notwithstanding the fact the attorney

7

was not engaged in petitioning on his own behalf, but on behalf of his client. *See Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7, 847 A.2d 1169 (stating attorney's statements to the media on behalf of their client "clearly amount[ed] to petitioning activity"). *Maietta* thus militates against a strict interpretation that would prelude a third party from engaging in covered petitioning activity if they were petitioning on another's behalf.

This issue does not ultimately prove determinative, because even if the court concludes the media defendants are entitled to employ the anti-SLAPP statute in these circumstances, for the reasons set forth below, the plaintiffs meet their burden at the second step and thus the motion is denied.

### C. Whether the Petitioning Activity Was Devoid of Factual Support

At the second step, the burden shifts to the non-moving party, the plaintiffs, "to establish, through pleadings and affidavits, that the moving party's exercise of its right of petition (1) was 'devoid of any reasonable factual support or any arguable basis in law,' and (2) 'caused actual injury' to the nonmoving party." *Nader*, 2012 ME 57, ¶ 16, 41 A.3d 551 (citations omitted). If the nonmoving party makes a prima facie showing that *any* petitioning activity lacked reasonable factual support, the burden is met as to the first prong of the second step. *Nader*, 2013 ME 51, ¶ 26, 66 A.3d 571 (requiring nonmovant show "at least one of the moving party's petitioning activities was 'devoid of any reasonable factual support'"). If the nonmoving party fails to establish both prongs, the court must grant the special motion to dismiss.

The defendants do not contest whether the alleged defamatory statements caused the plaintiffs injury under the second prong, but focus their arguments entirely on the first

8

prong.[1] Thus the plaintiffs have the burden to put forth prima facie evidence that any single one of Davis's petitioning statements lacked reasonable factual support. *See Nader*, 2013 ME 51, ¶ 26, 66 A.3d 571.

Plaintiffs focus on one article in particular, titled "Whistleblower: Former BPD detective says AG's office purposefully threw case against former police captain." In that article, defendants published assertions by former Biddeford police officer Terry Davis, who claimed that former Assistant Attorney General Eric Wright intentionally "threw" the investigation into allegations against Gaudette.[2]

Plaintiffs put forth an affidavit by Eric Wright that contends the central assertion by Davis published in the "Whistleblower" article—that the AG investigation and presentation of the evidence to the grand jury was deliberately thrown—is "totally false." (Wright Aff. ¶ 14.) The plaintiffs have thus produced sufficient evidence to allow a fact-finder to infer that some of the defendants' petitioning activity lacked a reasonable factual basis. As a result, the defendants' special motion to dismiss is denied. The court makes no determination as to the credibility or weight afforded to the evidence and need not at this stage. *See Nader*, 2012 ME 57, ¶¶ 34-35, 52, 41 A.3d 551 ("Even when faced

---

[1] Norman Gaudette has detailed actual injuries he alleges he suffered as a result of the articles, including lost income from losing a job and physical and mental injuries caused by loss of appetite, sleeplessness, and stress that has caused a flare-up of Crohn's Disease. (Norman Gaudette Aff. ¶¶ 24-34.) Joan Gaudette has alleged the injuries have resulted in a loss of care and companionship of her husband and caused her own emotional and physical symptoms, supporting her claim. (Joan Gaudette Aff. ¶¶ 13-14.) The defendants do not contest the plaintiffs' showing of actual injury, but focus arguments on the first prong: whether the statements lacked any reasonable factual basis. The court concludes the plaintiffs' uncontested prima facie showing of actual injury recited in the affidavit is sufficient to meet the second prong.

[2] A related case brought by Gaudette against Davis is currently pending before this court. *Norman Gaudette v. Terry Davis*, Docket No. CV-15-97. Oral arguments were heard in both this and the Davis case on October 7, 2015.

with conflicting evidence from a defendant, a plaintiff able to meet this 'low standard' could avoid dismissal of his or her claim.")

### III.   Conclusion

Based on the foregoing, the court denies the special motion to dismiss.

The entry shall be:

Defendants special motion to dismiss is DENIED.

SO ORDERED.

DATE: October 2, 2015

_____
John O'Neil, Jr.
Justice, Superior Court

CV-2015-123

ATTORNEYS FOR PLAINTIFFS:
GENE LIBBY
TARA RICH
LIBBY O'BRIEN KINGSLEY & CHAMPION
62 PORTLAND RD. SUITE 17
KENNEBUNK ME  04043

ATTORNEYS FOR DEFENDANTS:
JAMES HADDOW
GERALD F PETRUCCELLI
PETRUCCELLI MARTIN & HADDOW LLP
P O BOX 17555
PORTLAND ME  04112

z