STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-429

JOSEPH BRUNO, et al.,

    Plaintiffs

v.

PAUL CORRADO, et al.,

    Defendants

ORDER ON SPECIAL
MOTION TO DISMISS

STATE OF MAINE
Cumberland ~ Clerk's Office

MAR 3 1 2015

RECEIVED

Before the court is the defendants' special motion to dismiss counts II and III of plaintiffs' complaint under 14 M.R.S. § 556 (2014), Maine's anti-SLAPP[1] statute. For the following reasons, the motion is denied.

## Background

The facts alleged in the complaint are more fully set forth in the court's order on defendants' motion to dismiss. (1/5/15 Order.) This motion concerns counts II and III of the complaint, which allege defamation per se and false light invasion of privacy. These counts concern defendant Paul Corrado's statements initially made in a letter in the form of a petition written by Corrado and addressed to the governor. The letter reads as follows:[2]

The Honorable Governor of the State of Maine

Office of the Governor
#1 State House Station
Augusta, ME 04333-0001

**Phone**

---

1 SLAPP stands for Strategic Lawsuit Against Public Participation. *Schelling v. Lindell,* 2008 ME 59, ¶ 1 n.1, 942 A.2d 1226.
2 The letter is reproduced here word for word without any corrections.

207-287-3531
**Fax**
207-287-1034

Governor Le Page:

PLEASE SAVE PHARMACIST PAUL CORRADO AND CORRADO'S PHARMACY OF CORINTH, MAINE!

Mr. Corrado came to Corinth specifically to build a stagnant business. He was immediately adopted by the Town of Corinth and the surrounding communities and remains the most trusted medical professional in the area. He received many accolades from his former employer. Mr. Corrado was encouraged to open his own pharmacy in the same town. His former employer, Mr. Bruno has done everything in his power to put Mr. Corrado out of business. Mr. Bruno is also the President of the Board of Pharmacy and has used his influence against Mr. Corrado. Mr. Corrado is professional, caring, compassionate, and honest and has opened his pharmacy after hours and on weekends to fill emergency prescriptions for many of us in town. Mr. Corrado expected trouble with Mr. Bruno the moment he left his employment. He was extremely diligent and careful to dot his 'I's and cross his 't's in expectation of Mr. Bruno's onslaught. I believe Mr. Bruno interfered with Mr. Corrado's application for a Federal DEA license causing him to wait 18-months to become a fully functional pharmacy.

I believe Mr. Corrado is being excessively punished for something a former disgruntled technician who a may have caused the error intentionally and who has violated the HIPPA regulations by telling a patient he received a generic medication in place of a brand even though the generic is in fact, the unchanged brand drug re-distributed by 4 other manufacturers.

Mr. Corrado has hurdled every obstacle in opening and starting a business. He deserves to stay in business without the excessive penalties imposed on him personally and on his Pharmacy.

I ask that you get involved and reduce these penalties so that the financial burden does not put Mr. Corrado and his fledgling Pharmacy out of business.

Governor, I am asking you not ignore my request. Please investigate, remove Mr. Bruno from the Board and have the Board dismiss this complaint against Mr. Corrado. Mr. Corrado was very surprised to learn that the tablets are the same and does not need to be punished this harshly.

Sincerely,

Name: _____

Address: _____

City, ST., Zip: _____

(Compl. Ex. A.) Corrado advertised the letter on Facebook, telling his friends and customers to come sign it at his pharmacy. (Corrado Aff. ¶¶ 1-2.) According to Corrado, many of his customers and friends signed the letter and he mailed the signed letters to the governor. (Corrado Aff. ¶¶ 3-4.) After receiving the letters, someone from the governor's office contacted Corrado's attorney to inform him that the governor would not get involved in any matter before the Board of Pharmacy. (Corrado Aff. ¶ 5.)

## Procedural History

Plaintiffs filed their complaint on October 14, 2014. Defendants filed a motion to dismiss counts I, IV, and V of the complaint, which was granted in part and denied in part on January 5, 2015. The court dismissed count V and dismissed Bruno as a plaintiff from count I. Defendants moved to enlarge the time to file a special motion to dismiss to January 30, 2015,[3] which was granted. Defendants filed their special motion to dismiss on January 23, 2015.

## Discussion

**Special Motion to Dismiss Standard**

The special motion to dismiss is allowed under 14 M.R.S. § 556, which states:

---

3 Unless the court extends the time to file, a special motion to dismiss must be filed within 60 days of the service of the complaint. 14 M.R.S. § 556.

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss . . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556 (2014). This section "targets plaintiffs who 'do not intend to win their suits; rather they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances.'" *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169 (quoting *Morse Bros, Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842). "The typical mischief that the [anti-SLAPP] legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Morse Bros., Inc.*, 2001 ME 70, ¶ 10, 772 A.2d 842.

In applying the statute, the court employs a two-step, burden-shifting analysis. *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 15, 41 A.3d 551 (*Nader I*). The first step is to determine "whether the anti-SLAPP statute applies." *Id*. "At this step, the moving party (i.e., the defendant) 'carries the initial burden to show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government.'" *Id*. (quoting *Schelling v. Lindell*, 2008 ME 59, ¶ 7, 942 A.2d 1226). To meet this burden, "the moving party must show that the claims at issue are 'based on the petitioning activities alone and have no substantial basis other than or in addition to the

4

petitioning activities.'" *Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 12, 103 A.3d 547 (quoting *Nader I*, 2012 ME 57, ¶ 22 n.9, 41 A.3d 551).

If the moving party demonstrates that the statute applies, "the burden shifts to the nonmoving party to establish, through pleadings and affidavits, that the moving party's exercise of its right of petition (1) was 'devoid of any reasonable factual support or any arguable basis in law,' and (2) 'caused actual injury' to the nonmoving party." *Nader I*, 2012 ME 57, ¶ 16, 41 A.3d 551 (quoting 14 M.R.S. § 556). At this step, the nonmoving party must present "'some evidence' that the defendant's petitioning activity was devoid of factual or legal support and caused actual injury. Even when faced with conflicting evidence from a defendant, a plaintiff able to meet this 'low standard' could avoid dismissal of his or her claim.'" *Nader I*, 2012 ME 57, ¶ 35, 41 A.3d 551.

The court must apply this framework to defendants' motion.

**Defendants' Burden**

At the outset, the court notes that Bruno's claims are not the typical claims that the anti-SLAPP statute was enacted to prevent. *Maietta Constr., Inc.*, 2004 ME 53, ¶ 6, 847 A.2d 1169. The court also notes there are competing constitutional rights involved in anti-SLAPP cases. *Nader I*, 2012 ME 57, ¶¶ 23-25, 41 A.3d 551; *see also id.* ¶ 48 (SILVER, J., concurring) (noting that plaintiff had constitutional interest in access to courts). Nevertheless, the statute as written applies to a broad swath of activity. *Schelling*, 2008 ME 59, ¶¶ 11-12, 942 A.2d 1226.

The statute protects the following activity:

As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or

5

judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556.

The Law Court has not articulated any clear guidance at step one of the analysis. In previous cases, it has interpreted the statute broadly. *See Maietta Constr., Inc.*, 2004 ME 53, ¶¶ 3, 7, 847 A.2d 1169 (letters to the City Council, the Mayor, and statements to newspapers alleging that a developer was violating his contract with the city "clearly amount to petitioning activity"); *Schelling*, 2008 ME 59, ¶ 13, 942 A.2d 1226 (petitioning activity "includes a letter, written to a newspaper, that is designed to expand the public consideration of a controversial issue recently considered by the Legislature"). Under the unique facts of this case, however, the court concludes that defendants have failed to meet their burden at step one of the analysis for two reasons. First, defendants have failed to show that Corrado's letter constitutes petitioning activity protected under the statute. Second, defendants have failed to show that plaintiffs' claims are based solely on the letter, even if it is petitioning activity. These two reasons are discussed below.

*Not Petitioning Activity*

Corrado has failed to show that his letter to the governor constitutes the type of petitioning activity protected by the statute. The statements in the letter were not "made in connection" with any issue under review by the governor. Defendant had the opportunity, and did in fact, bring his concerns to the Board of Pharmacy. (Pl.'s Ex. D.) Given the wording of the letter and the fact that it was

6

addressed to the governor, the letter was not "reasonably likely to encourage consideration or review" of the allegations in the letter. Finally, although the letter was circulated to Corrado's customers and Corrado's Facebook friends, the petition was not reasonably likely to enlist public engagement. The letter was not sent to a newspaper, it does not ask the public to submit comments or letters to the Board of Pharmacy, and it only asks the governor, the chief executive of the state, to investigate a Board of Pharmacy complaint. Although the statute may be read in a way that it would apply to Corrado's letter, the court will not do so because it would not serve the purpose behind the statute. *See Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 943 (Mass. 1998) ("A matter may be within the letter of a statute and not come within its spirit, if the matter is beyond the mischief intended to be reached or if to include it would require a radical change in established public policy or in the existing law and the act does not manifest any intent that such a change should be effected.").

*Claims Not Based on Petitioning*

Even if the letter in this case is considered protected petitioning activity, the Law Court has adopted a requirement that the statute only applies if plaintiffs' claims are solely "based on" the exercise of Corrado's right to petition. *Nader I*, 2012 ME 57, ¶ 22 n.9, 41 A.3d 551; *Town of Madawaska*, 2014 ME 121, ¶ 12, 103 A.3d 547. Corrado has failed to meet his burden to show that Bruno's claims are "based on" the exercise of Corrado's right to petition alone. First, the claims are not based on Corrado sending a letter to the governor. Rather, they are based on him sharing the letter, which includes the alleged defamatory statements regarding Bruno, with his customers and on the internet. Second, the issues in this lawsuit are between two private individuals and their companies. Corrado's

7

letter to the governor does not raise an issue of public concern. *Cf. Schelling*, 2008 ME 59, ¶ 13, 942 A.2d 1226 (applying statute to letter to newspaper that sought to expand public consideration of a controversial issue). Third, the claims in this case, when taken as a whole, allege that Paul Corrado and Carrado's Pharmacy engaged in a campaign to tarnish Bruno's reputation and steal Community Pharmacy's customers. While counts II and III specifically mention the statements in the letter, the other allegations in the complaint are relevant to the court's analysis in deciding whether the claims are "based on" Corrado's exercise of the right to petition. *See Burley v. Comets Cmty. Youth Ctr., Inc.*, 917 N.E.2d 250, 254-56 (Mass. App. Ct. 2009) (refusing to dismiss claim when allegations in complaint not based solely on protected petitioning activity); *see also Duracraft Corp.*, 691 N.E.2d at 943 ("[W]e adopt a construction of 'based on' that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated."). Taking these other allegations into consideration, the court concludes that Bruno's claims are not based on Corrado's petitioning activity alone.

### Conclusion

Because defendants have not met their burden at step one of the analysis under Maine's anti-SLAPP statute, the special motion to dismiss must be denied.

The entry is:

Defendants' special motion to dismiss is DENIED.

Date: 3/31/15

Joyce A. Wheeler
Justice, Superior Court

8

STATE OF MAINE
CUMBERLAND, ss

ENTERED JAN 1 4 2015

JAW-CUM-01-05-15

STATE OF MAINE
Cumberland, ss, Clerk's Office

JAN 05 2015

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-429

JOSEPH BRUNO, et al.,

Plaintiffs

v.

PAUL CORRADO, et al.,

Defendants.

ORDER ON MOTION
TO DISMISS

Before the court is the defendant's motion to dismiss counts I, IV, and V of plaintiffs' complaint. For the following reasons, the motion is granted in part and denied in part.

## FACTS

The following facts are taken from plaintiffs' complaint. Plaintiff Joseph Bruno is the owner and CEO of Community Pharmacy, a Maine limited partnership that operates multiple pharmacies in Maine. (Compl. ¶¶ 1-3.) Bruno is a licensed Maine pharmacist and the president of the Maine Board of Pharmacy. (Compl. ¶ 9.) Bruno is also a former representative in the Maine House of Representatives, and he currently serves as a Selectman for the Town of Raymond. (Compl. ¶¶ 10-11.) Defendant Paul Corrado is the owner and president of Corrado's, Inc., a Maine corporation that operates a single pharmacy in Corinth, Maine. (Compl. ¶¶ 4-6.)

1

Corrado was an employee of Community Pharmacy until he was terminated on September 6, 2011. (Compl. ¶ 7.) After he was terminated, Corrado opened Corrado's Pharmacy, which competes with Community Pharmacy's Corinth location. (Compl. ¶ 8.) Since 2012, the Maine Board of Pharmacy has received multiple complaints about Corrado's Pharmacy, and at least some of these complaints resulted in disciplinary action, including fines, license suspension, and probation. (Compl. ¶¶ 12-13.) Because of Bruno's prior relationship with Corrado, he recuses himself when the Board considers complaints against Corrado's. (Compl. ¶ 15.)

Corrado wrote a letter addressed to Governor Paul LePage, claiming that Bruno "has done everything in his power to put Mr. Corrado out of business" and that he "has used his influence against Mr. Corrado." (Compl. ¶¶ 19-21.) The letter asks the Governor to investigate Bruno and remove him from the Board of Pharmacy. (Compl. ¶ 22.) Corrado disseminated the letter in the Town of Corinth and published it on the internet, including on Facebook. (Compl. ¶ 17.)

Corrado's Pharmacy's agents or employees have accessed confidential and proprietary customer information from Community Pharmacy. (Compl. ¶ 24.) Corrado's made calls to Community Pharmacy's customers telling them that Community Pharmacy of Corinth was closing and telling them that they should switch their prescriptions to Corrado's. (Compl. ¶¶ 24-25.) At least one of Community Pharmacy's customers switched their prescriptions to

2

Corrado's temporarily, and many others were confused and inquired as to whether Community Pharmacy was closing. (Compl. ¶¶ 26-27.) Corrado himself has come into Community Pharmacy's Corinth Location and told a customer, "I have a pharmacy up the road, you should come check it out." (Compl. ¶ 28.)

## DISCUSSION

### 1. Standard of Review

On review of a motion to dismiss for failure to state a claim, the court accepts the facts alleged in plaintiff's complaint as admitted. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. The court then "examine[s] the complaint in the light most favorable to plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Doe v. Graham*, 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting *Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830). "For a court to properly dismiss a claim for failure to state a cause of action, it must appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995)).

### 2. Count I: Tortious Interference (Bruno and Community Pharmacy v. Paul Corrado and Corrado's, Inc.)

Plaintiffs assert that Corrado and Corrado's Pharmacy are liable for tortious interference with a prospective economic advantage for improperly

3

driving Community Pharmacy's customers to Corrado's Pharmacy. "Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104. Defendants argue that the complaint fails to plead interference by fraud or intimidation.

*a. Interference by Fraud*

The elements of fraud for the purposes of a tortious interference claim are:

> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Id.* ¶ 14 (quoting *Petit v. Key Bank of Maine*, 688 A.2d 427, 430 (Me. 1996)). The circumstances surrounding the alleged fraud must be "stated with particularity." *Barnes v. McGough*, 623 A.2d 144, 146 (Me. 1993). Unlike a fraud claim, however, plaintiffs need only prove a tortious interference claim by a preponderance of the evidence. *Petit*, 688 A.2d at 433.

Plaintiffs' tortious interference claim is based on allegations that Corrado told Community Pharmacy's customers that Community Pharmacy was closing. The false statement is that the pharmacy was closing, which is a material fact, and Corrado's knowledge of the statement's falsity can be

4

inferred. Corrado allegedly intended to lure Community Pharmacy's customers to his store, and his misrepresentations allegedly succeeded in causing at least one customer to switch her prescriptions to Corrado's temporarily. Contrary to defendants' assertions, these allegations are sufficient to satisfy the elements of fraud for purposes of the tort.

### b. *Interference by Intimidation*

Plaintiffs argue that count I is based on intimidation as well as fraud. Intimidation, for purposes of the tort, "involves unlawful coercion or extortion." *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d 1104. The case *Pombriant v. Blue Cross/Blue Shield of Maine* illustrates the type of intimidation required. 562 A.2d 656 (Me. 1989). In that case,

> Blue Cross procured the breach of contract between Pombriant and Bennett by the intimidating means of making it clear to Bennett that the only manner in which it could avail itself of Blue Cross's lower rates for the desired insurance would be by using the brokerage services of Johnson . . . .

*Pombriant*, 562 A.2d at 659. Although plaintiffs argue that many of Community Pharmacy's customers are elderly and vulnerable, the complaint does not allege that any of its customers were in any way intimidated by Corrado's. The false statement that Community Pharmacy was closing does not amount to "unlawful coercion or extortion." According to the complaint, the only reason Community Pharmacy's customers might have switched their prescriptions to Corrado's is because they thought Community Pharmacy was closing, not because they were pressured into switching.

5

*c. Justifiable Reliance*

Defendants argue that plaintiff has failed to sufficiently allege that Community Pharmacy's customers justifiably relied on the alleged misrepresentation that Community Pharmacy was closing. Plaintiff does allege, however, that many customers were confused and at least one customer switched her prescriptions to Corrado's. These allegations are sufficient to establish justifiable reliance.

*d. Bruno as Plaintiff*

Defendant argues that Bruno lacks standing to assert a tortious interference claim individually. Defendants are correct that there are no allegations in the complaint that defendants interfered with Bruno's personal prospective economic advantage. Bruno can therefore be dismissed as a plaintiff on count I.

3. Count IV: Defamation (Community Pharmacy v. Corrado's, Inc.)

*a. Defamatory Statement*

To prevail on a defamation claim, a plaintiff must demonstrate the following elements:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm of the existence of special harm caused by the publication.

6

*Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447. "Whether a false statement conveys a defamatory message is a question of law." *Id.*

Plaintiffs' complaint alleges that Corrado told Community Pharmacy customers that the Community Pharmacy store in Corinth was closing. (Compl. ¶ 25.) Defendant argues that this statement was not defamatory.

The Law Court has previously cited the Restatement for guidance on defamation claims. *See Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996). The Restatement (Second) of Torts provides that a partnership may be treated like a corporation for the purposes of a defamation claim. Restatement (Second) of Torts § 562 (1977). "One who publishes defamatory matter concerning a corporation is subject to liability to it:

(a) if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it . . . ."

Restatement (Second) of Torts § 561 (1977). The alleged statement that the Corinth store was closing prejudiced Community Pharmacy in the conduct of its business because it confused Community Pharmacy's customers and caused at least a temporary loss of business. Because the alleged statement relates to the ability to conduct a trade or business, it is actionable per se.[1] *See* Restatement (Second) of Torts § 573 (1977). Cases from other jurisdictions confirm this result. *See Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 501-502 (E.D. Va. 2003) (denying

---

[1] Plaintiff also alleges special damages. (Compl. ¶ 50.)

7

motion to dismiss when complaint alleged defendant published a false statement that plaintiff was "going out of business"); *GN Danavox, Inc. v. Starkey Labs., Inc.*, 476 N.W.2d 172, 176 (Ct. App. Minn. 1991) (upholding punitive damages award for statements in flyer that suggested, among other things, that plaintiff was going out of business).

The cases defendants rely on are distinguishable. In *Picard v. Brennan*, the Law Court held that a false statement that an employee had been discharged was not defamation per se. 307 A.2d 833, 835 (Me. 1973). The court reasoned that "[a]n employee may be discharged for any one of a multitude of reasons unrelated to his honesty, integrity or occupational skill, or indeed for no reason at all." *Id.* Thus, a statement that an employee was discharged without stating a reason for the discharge is insufficient to support a claim of defamation. *Id.*

*Picard* is distinguishable because a former employee's professional or business interests are much different than an operating business's interests. In *Picard*, the reason for discharge was critical—the plaintiff would only suffer harm if defendant had said the employee was discharged for misconduct, incompetence, or some other negative reason. By contrast, a false statement that a business is closing is harmful to that business's interests, regardless of the reason it is closing. The necessary consequence of the statement, if believed by customers, is that the business will no longer be able to supply the customers' needs. Customers will become confused and

8

they might switch to competitors, which is precisely what Community Pharmacy alleges has occurred.

Defendant also relies on *Kforce, Inc. v. Alden Personnel, Inc.*, a New York case that involved a defendant who wrote an email to its own business contacts that stated: "Better news is that we have lost lots of competition in the local market with Robert Half and Kforce basically closing their IT divisions in the area." 288 F. Supp. 2d 513, 515 (S.D.N.Y. 2003). The court dismissed the defamation claim, stating "[t]he statement is at most an allegation of unprofitability in a particular geographic area." *Id.* at 518. The case is distinguishable for several reasons. First, the email was to the defendant's own business contacts, it was not directly made to the competitor's customers, and the email did not tell prospective customers to shop at defendant's business as an alternative. *Id.* at 515. Second, the court found that it must consider the statement in context and noted that a "less well-established corporation would be more susceptible to harm from a competitor's remarks." *Id.* at 518. Because Kforce "employ[ed] over 1,000 recruiting specialists operating in more than 40 markets nationwide", the court found that "damages to Kforce cannot be assumed." *Id.* Needless to say, Community Pharmacy does not have the type of national presence described in the *Kforce* case. (Compl. ¶¶ 2-3.) Finally, the court must consider the nature of the business. Community Pharmacy provides prescriptions to people in rural communities. If Community Pharmacy were closing, its

customers would need to quickly make arrangements to find another pharmacy to ensure they are able to get their medications. The impact of the false statement on Community Pharmacy's customers is far more immediate than the impact described in *Kforce*.

### b. *Identity of the Customers*

Defendants argue that plaintiffs have failed to sufficiently identify to whom the alleged defamatory statements were made. Plaintiff alleges that Corrado's employees accessed Community Pharmacy's confidential customer information and contacted its customers to tell them Community Pharmacy was closing. The complaint further alleges that at least one customer switched her prescriptions to Corrado's after being contacted. These allegations are sufficient to survive a motion to dismiss. As acknowledged by defendants' own case, dismissing the claim "would be an unduly harsh sanction for failure to plead specific information not yet clearly required by Maine law." *Monahan v. Chapman & Drake*, 1999 WL 33117089, at *4 n.3 (D. Me. 1999). Plaintiff will need to identify specific customers to prevail on its defamation claim at trial.

4. Count V: False Light Invasion of Privacy (Community Pharmacy v. Corrado's, Inc.)

Defendants argue that a business entity lacks standing to bring a false light claim. Although there does not appear to be any Maine case on point, the majority of jurisdictions that have addressed the issue appear to limit the cause of action to individuals. *See Holomaxx Technologies v. Microsoft Corp.*,

10

783 F. Supp. 2d 1097, 1107 (N.D. Ca. 2011); *Seaton v. TripAdvisor, LLC*, 728 F.3d 592, 601 (6th Cir. 2013); *see also Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 18 (D. Me. 2012) ("Plaintiffs concede that a corporation may not bring a false light cause of action . . . ."). Because businesses typically lack privacy rights, the court agrees with these cases that hold that a business entity cannot bring a false light invasion of privacy claim. *See* Restatement (Second) of Torts § 652I cmt. c (1977) ("A corporation, partnership or unincorporated association has no personal right of privacy."). Count V is dismissed.

The entry is:

> Joseph Bruno is dismissed as a plaintiff from Count I of the complaint;
> Count V of the complaint is dismissed; and
> Defendants' motion to dismiss is denied as to all other counts of the complaint.

Date: January 5, 2015

Joyce A. Wheeler
Justice, Superior Court

Plaintiffs-Adam Taylor Esq/Ilse Teeters-
Trumpy Esq
Defendants-David Goldman Esq/Christopher
Taintor, Esq.

11