STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-497

STATE OF MAINE                    )
                                  )
        Plaintiff,                )
                                  )
    v.                            )        ORDER ON DEFENDANT'S
                                  )        MOTION TO DISMISS
BRIAN INGALLS,                    )        FOR VAGUENESS
                                  )
        Defendant.                )

REC'D CUMB CLERKS OFC
APR 14 '20 PM2:00

Before the Court is Defendant Brian Ingall's Motion to Dismiss the State of Maine's Complaint pursuant to Phase II of this bifurcated proceeding. Phase I consisted of a jury trial on the merits and pertained exclusively to the issue of whether Defendant violated the Maine Civil Rights Act's noise provision, 5 M.R.S. § 4684-B(2)(D) (2019) (hereinafter the "Act"). As part of Phase II, Defendant now moves to dismiss the State's Complaint on the grounds that the Act was unconstitutionally vague "as-applied" to him.

For the following reasons, Defendant's Motion is denied.

## I.    Background

The following facts are drawn from the parties Phase II pleadings, as well as trial records[1] gathered from Phase I:

Planned Parenthood of Northern New England operates a health care facility on the second floor of 443 Congress Street in Portland, Maine. On Fridays, during the fall of 2015, Mr. Ingalls routinely preached his pro-life views on the public sidewalk outside the clinic. Mr. Ingalls was aware that Planned Parenthood provided abortion services on Fridays.

---

[1] Trial records are cited as follows: Preliminary Injunction Hearing Transcript dated April 22, 2016 (hereinafter "Inj. Tr." ); and Phase I Trial Transcript dated August 13-14, 2019 (hereinafter "Tr.").

For Plaintiff: Leanne Robbin, AAG

For Defendant:
Stephen Whiting, Esq. & Brandon Bolling, Esq.

On October 23, 2015, Planned Parenthood lodged a noise complaint with the Portland Police Department. Planned Parenthood's policy is to report protestors to the Portland Police when they can hear protestors on the street from inside the building.[2] Mr. Ingalls was described as facing the building, yelling towards the second floor. (Tr. 128-29, 295.) Sergeant Eric Nevins arrived at the scene and eventually went inside to speak with Meredith Healey, the site coordinator. Ms. Healey identified Mr. Ingalls as the one making all the noise. She reported that, from inside the clinic, she could hear every word he was saying and that patient care was being affected by the noise level. Sergeant Nevins then warned Mr. Ingalls that he "needed to keep his voice down so that he could not be heard inside of the building." (Tr. 81.)

Shortly after Sergeant Nevins left the scene, Ms. Healey learned that patients in the waiting area were complaining about the noise level and had asked to be relocated. (Tr. 190.) Ms. Healey confirmed that Mr. Ingalls's preaching could be heard inside the waiting room and counseling rooms, and again called the Portland Police. She informed Sergeant Nevins that Mr. Ingalls was still "looking up at the second floor" preaching "about as loud as he was the previous time." (Tr. 191.)

Although Sergeant Nevins did not personally hear Mr. Ingalls preaching that day, he determined that there was sufficient evidence to cite Mr. Ingalls for violating the Maine Civil Rights Act's noise provision, which provides:

> 2. **Violation.** It is a violation of this section for any person, whether or not acting under color of law, to intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State by any of the following conduct:

---

[2] Planned Parenthood typically hires and pays off-duty Portland Police officers to work outside Planned Parenthood on Fridays in order to ensure the safety of patients and staff, although no officer was present on Friday, October 23, 2015.

D. After having been ordered by a law enforcement officer to cease such noise, intentionally making noise that can be heard within a building and with the further intent either:

(1) To jeopardize the health of persons receiving health services within the building; or

(2) To interfere with the safe and effective delivery of those services within the building.

5 M.R.S. § 4684-B(2)(D).

On October 30, 2015, the State filed a complaint requesting injunctive relief.[3] Defendant moved, unsuccessfully, to dismiss the complaint on the grounds that the Act was unconstitutionally vague on its face. The Superior Court (*Walker, J.*) denied the motion, but preserved the opportunity for Mr. Ingalls to challenge the constitutionality of the Act "as-applied" to him after developing an evidentiary record. *State v. Ingalls*, No. CV-15-497, 2016 Me. Super. LEXIS 55, at *2, 14 (Mar. 17, 2016) (preserving the opportunity to argue that "while the Act itself is neutral and constitutional on its face, it has been enforced selectively in a viewpoint discriminatory way against Mr. Ingalls.").

Approximately two months later, in a separate facial challenge brought by another protester, the United States District Court for the District of Maine, by order dated May 23, 2016, enjoined enforcement of the Act. *See March v. Mills*, No. 2:15-cv-515-NT, 2016 U.S. Dist. LEXIS 67087 (D. Me. May 23, 2016). The instant matter was stayed pending appeal; and, the First Circuit ultimately reversed the District Court's decision, concluding

---

[3] The MCRA empowers the Attorney General to bring a civil action for injunction against any person who violates section 4684-B. *See* 5 M.R.S. § 4681(1). Criminal penalties may only be imposed if a person "knowingly violates a temporary restraining order or preliminary or permanent injunction." *Id.* § 4681(6).

that the Act was not unconstitutionally vague on its face.[4] *See March v. Mills*, 867 F.3d 46 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 1545 (2018).

On October 4, 2017, the Superior Court granted a preliminary injunction prohibiting Mr. Ingalls "from intentionally making any noise that can be heard within the building at 443 Congress Street in Portland, Maine or any other Planned Parenthood facility." *State v. Ingalls*, CUMSC-CV-2015-497 (Me. Super. Ct., Cum. Cty., Oct. 4, 2017).

Prior to trial, the Court bifurcated the proceeding into two phases. Phase I consisted of a two-day jury trial on the merits, which ultimately resulted in a guilty verdict against Mr. Ingalls on August 14, 2019. This Court is now called upon to addresses Phase II of the proceeding, which pertains exclusively to Mr. Ingalls's claim that the Act was unconstitutionally vague "as-applied" to him.

Mr. Ingalls seeks dismissal of this matter on the grounds that the Act, as-applied to him (1) failed to proscribe a reasonably ascertainable standard sufficient enough to prevent arbitrary and discriminatory enforcement; (2) failed to give him a reasonable opportunity to know what conduct was prohibited; and (3) infringed upon his First Amendment freedoms. (Mot. Dismiss 28.)

## II. Standard of Review

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. When reviewing a

---

[4] The First Circuit concluded that the Act is a "facially content-neutral measure" that "serves [a] significant state interest without burdening substantially more speech than necessary and while leaving open ample alternative avenues for communication." *March*, 867 F.3d at 69. The Court opined that while "the measure does not require, as a practical matter, such uneven, content-based enforcement," "the provision would be subject to a serious as-applied challenge if its disruptive-intent requirement were enforced in an entirely content dependent way . . . ." *Id.* at 61.

motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), "the court will examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83. We accept as true the material allegations in the complaint. *Id.* The complaint will be dismissed "only when it appears beyond a doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064.

Generally, a court may not consider documents that are outside the complaint without converting the motion to one for a summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. In this bifurcated proceeding, however, the Court has the benefit of the entire trial record from Phase I, and has taken judicial notice of the contents therein pursuant to M.R. Evid. 201.[5] Additionally, the parties have incorporated portions of the trial transcripts as a factual basis to support or oppose the Motion. Accordingly, the facts gathered from Phase I may be used at this stage of the proceeding to distinguish Defendant's as-applied challenge from his failed facial challenge.

---

[5] Pursuant to M.R. Evid. 201 "[a] court has the discretion to judicially notice a fact that is not subject to reasonable dispute in that it is either 'generally known within the territorial jurisdiction of the trial court' or 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Finn v. Lipman*, 526 A.2d 1380, 1381 (Me. 1987) (quoting M.R. Evid. 201(b)). "Such matters include, among others, the prior pleadings filed in the same court in an action related to the cause of action pending before the court." *Id.*

## III. Discussion

The Due Process Clause of the Fourteenth Amendment to the United States Constitution, as similarly stated in the Maine Constitution, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see* Me. Const. art. I, § 6-A. The court's task when evaluating a vagueness challenge to a statute that implicates First Amendment liberties "is to ensure that persons of ordinary intelligence have 'fair warning' of what the law prohibits, that the law provides explicit standards for those who apply it, and that the law avoids chilling the exercise of first amendment rights."[6] *Nat'l Org. for Marriage, Inc. v. McKee*, 669 F.3d 34, 44-45 (1st Cir. 2012) (internal quotation marks and citations omitted). Indeed, "speech on public issues occupies the highest rung of hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

In an as-applied constitutional vagueness challenge such as this, a party asserts that the particular application of a statute is "unconstitutional as-applied to his particular conduct, even though the statute may be valid as to other parties." *Cook v. Gates*, 528 F.3d 42, 56 n.8 (1st Cir. 2008). Having conceded that the Act is facially constitutional, this as-applied challenge consists only of a challenge to the statutes application to the party before the court. *Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017); (Def.'s Reply to Pl.'s Opp'n 2.) When a statute is challenged as unconstitutional, trial courts "must construe a statute to preserve its constitutionality, or to avoid an unconstitutional

---

[6] Put another way, a statute is "void for vagueness when [it fails] to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and which will assure that the determination of those rights will not be left to the purely arbitrary discretion" of those enforcing it. *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 12, 995 A.2d 223.

application of the statute, if at all possible." *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 19, 41 A.3d 551.

### A. *Arbitrary and Discriminatory Enforcement*

Defendant avers that the Act invites arbitrary and discriminatory enforcement; and, that the Portland Police enforced the Act by arbitrary and discriminatory means. (Def.'s Reply to Pl.'s Opp'n 1-4.) At first read, the testimony cited by Defendant tends to support his contention that the Portland Police "failed to use consistent standards to enforce the MCRA against Defendant." (Def.'s Reply to Pl.'s Opp'n 2; *see* Mot. Dismiss 28.) However, after a thorough review of all the facts presented at trial, there is sufficient evidence for the Court to conclude that Defendant was not singled out for enforcement based on his viewpoint. Similarly, the facts presented fail to show that individuals with contrary viewpoints, were not singled out for enforcement. *See Phelps-Roper*, 867 F.3d at 897.

The Act seeks to prevent noise that is "loud enough that it can be heard within a building." 5 M.R.S. § 4684-B(2)(D). It further limits enforcement only to those who (1) have first been warned to reduce their noise level; and (2) acted with the further intent to either jeopardize the health of those receiving health services in the building, or to interfere with the safe and effective delivery of those services within the building. *Id.* § 4684-B(2)(D)(1)-(2).

Defendant contends that given the Act's language, and despite multiple attempts to seek guidance, the Portland Police struggled and failed to furnish an objective measurable standard. At times, Defendant was told to "quiet down," "lower your voice," that "you need to go from a level nine to a level seven," and to "keep his voice down so that he could not be heard inside of the building." (Tr. 81, 287; Mot. Dismiss 28.) Defendant also attested to a "thumbs-up-thumbs-down" system between himself and

Officer Graham Hults. (Tr. 289.) Despite the varied approaches employed to reduce the noise level, Defendant was never told to stop preaching.

Defendant's assertion that the Portland Police enforced the Act against him in an arbitrary and discriminatory manner – permitting those with a contrary viewpoint to preach loudly, while enforcing the Act against a person voicing Defendant's point of view lacks evidentiary support. (Tr. 287.) There is no evidence that the Portland Police favored or disfavored his particular message; nor is there evidence that the Portland Police enforced the disruptive-intent requirement in a viewpoint discriminatory way against Mr. Ingalls. *See March,* 867 F.3d at 61; *State v. Ingalls,* No. CV-15-497, 2016 Me. Super. LEXIS 55, at *11-12 (Mar. 17, 2016). To the contrary, Defendant was consistently advised that it "wasn't the content, it was the volume that was the concern." (Tr. 67.)

Based on the evidence presented, the Court finds and concludes that the noise level proscribed by the Act and as applied against Defendant, while not fine-tuned to a decibel level, articulates a reasonably ascertainable standard, that was interpreted and applied systematically, in a viewpoint neutral manner.

### B. Fair Notice

Defendant asserts that he was not adequately advised of the prohibited conduct. (Mot. Dismiss 28.) The evidence presented, however, belies such an assertion because this Court, as well the First Circuit, previously ruled that the Act's intent and warning requirement mitigate the, admittedly inexact, noise level standard.[7] *See March,* 867 F.3d at 60-61; *Ingalls,* 2016 Me. Super. LEXIS 55, at *10-11.

---

[7] *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499 (1982) ("the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

On October 23, 2015, Defendant had knowledge of the illegality of preaching loud enough that he could be heard inside the clinic with the intent to disrupt health services. (Inj. Tr. 84; Tr. 40-41.) After Defendant received his initial warning that he could be heard inside the building, he resumed preaching "about as loud as he was the previous time." (Tr. 191.) The jury's verdict in Phase I establishes that the Defendant had the requisite intent to disrupt health services:

> [W]hether an individual has the requisite intent to interfere with or jeopardize the delivery of healthcare services is a fact-specific inquiry that may depend on a variety of factors, including, crucially, whether the individual has ignored an initial order "by a law enforcement officer to cease such noise."

*March*, 867 F.3d at 57 (quoting 5 M.R.S. § 4684-B(2)(D)).

In addition to having been warned about his volume in the past, Defendant had, prior to October 23, 2015, been explicitly apprised of the language in the Act.[8] (Tr. 292; Pl.'s Opp'n to Def.'s Mot. Dismiss. 2-3.)

Given these facts, the Court is hard pressed to find that the Defendant "could not reasonably understand that his contemplated conduct is proscribed."[9] *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963). When a law burdens First Amendment rights "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). "The mere fact that a regulation requires interpretation does not make it vague." *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 93 (1st Cir. 2004).

---

[8] The State presented evidence that on August 21, 2015, Officer Chris Shinay read Defendant the exact language in the Act, and advised him that he could continue preaching as long as he could not be heard inside the building, but that his current noise level was too loud. (Pl.'s Opp'n to Def's Mot. Dismiss. 2-3.)

[9] The State also presented evidence that Defendant and another protester adopted a sort of "tag-team" approach, by which Defendant would take over preaching after another had been warned to reduce their noise level. (Pl.'s Opp'n to Def.'s Mot. Dismiss 3.)

The Court finds Defendant's argument that he was not given fair warning unpersuasive. The Court concludes that Enforcement of the Act against Defendant did not run afoul of the Due Process Clause on the grounds that the Act's language, or the officers, failed to adequately advise a person in Defendant's position of the prohibited conduct.

### C. *Reliance on a Third Party*

Lastly, Defendant argues that the Act is unconstitutionally vague because it "proscribes conduct based on the unpredictable reactions of third parties," and that the officers relied on a third party's de facto determination of what constituted a violation of the Act. (Mot. Dismiss 4; Def.'s Reply to Pl.'s Opp'n 2, 6.)

Defendant cites to *Coates v. City of Cincinnati*, 402 U.S. 611, 611 (1971) in support his position. In *Coates*, the Supreme Court struck down a city ordinance providing that: "if three or more persons meet together on a sidewalk or street corner, they must conduct themselves so as not to annoy any police officer or other person who should happen to pass by." *Id.* at 614. The Court concluded that the statute was unconstitutionally vague because "it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected activity." *Id.* at 614-15. Unlike the statutory language at issue in this case, the Cincinnati ordinance failed to proscribe *any* ascertainable standard:

> Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, men of common intelligence must necessarily guess at its meaning.

*Id.* at 614 (internal quotation marks and citation omitted). *Coates* stands for the proposition that the First and Fourteenth Amendments do not permit a state from

penalizing "annoying" conduct, as it undoubtedly invites discriminatory enforcement. *Id.* at 615-16.

In contrast, enforcement of the Maine Civil Rights Act's noise provision is not dependent upon what one policeman or passerby finds "annoying." The Act does not give police officers or a third party "unfettered freedom to act on nothing but their own preferences and beliefs." *U.S. v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993) (citing *Smith v. Goguen*, 415 U.S. 556, 575 (1974)). Nor does it, as Defendant suggests, arm Planned Parenthood with a "'heckler's veto' that forecloses Defendant from knowing if his speech is subject to sanction until after the third-party reaction occurs." (Mot. Dismiss 32.) The Act's warning and intent requirement precludes such effect.

While the Act does rely on the veracity of reports by third party witnesses – as evidenced by the fact that the officers relied on a Planned Parenthood employee's report – such reliance may be necessary given the high likelihood that a person in Defendant's position would cease preaching, or reduce their noise level in the presence of a uniformed officer. (Tr. 185.) The Court finds and concludes that such reliance on third party witnesses, however, does not render enforcement of the Act against Defendant unconstitutional.[10]

---

[10] The Portland Police Department's policy is that if a staff member at Planned Parenthood complained that they could hear loud noise directed at the clinic from inside the building, they would notify the police who would then verify the complaint and warn the individual. (Tr. 65.) To verify the complaint, officers would typically go into various rooms and listen. (Inj. Tr. 11-12.) However, it is not the Police Department's policy to limit enforcement of the Act only to those situations where an officer personally observes a suspected violation. (Tr. 91-92.)

## IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED. The jury's

August 14, 2019 verdict will stand and the Court will schedule a date for sentencing.

The Clerk is directed to incorporate this Order into the docket by reference

pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____4/14/2020_____

Mary Gay Kennedy, Justice
Maine Superior Court

**Entered on the Docket:** 5|11|2020

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-497

STATE OF MAINE                          )
                                        )
                    PLAINTIFF           )
                                        )
VS.                                     )
                                        )          **JUDGMENT**
                                        )
BRIAN INGALLS                           )
                                        )
                    DEFENDANT           )

 

 

PURSUANT to the jury's answers to the written interrogatory submitted to them and their resulting verdict on August 14, 2019, the Clerk is hereby ordered to enter the following Judgment:

**JUDGMENT:**     For the Plaintiff, State of Maine, against Defendant Brian Ingalls.

DATED: 4/22/2020

MaryGay Kennedy
Justice, Superior Court

Entered on the Docket: 5/11/2020

REC'D CUMB CLERKS OFC
APR 29 '20 PM 12:14

STATE OF MAINE                    SUPERIOR COURT
CUMERLAND                         CIVIL ACTION
                                  DOCKET NO. CV-15-497


STATE OF MAINE,                   )
                                  )
          Plaintiff               )
v.                                )    ORDER ON MOTION FOR
                                  )    PRELIMINARY INJUNCTION
BRIAN INGALLS,                    )
                                  )
          Defendant.              )

STATE OF MAINE
Cumberland. ss  Clerk's Office

OCT 04 2017
1:59 p.m.
RECEIVED

I.     Background

       *A. Factual background*

       Defendant Brian Ingalls is a Christian man who believes that "abortion is sinful because it is an act that deliberately destroys innocent human life." (Ingalls Aff. ¶ 4). He feels compelled by his faith to share his beliefs. *Id.* In order to share his beliefs, Defendant Ingalls prayed, counseled, and preached outside of the Planned Parenthood at 443 Congress Street, Portland, Maine, on a weekly basis for approximately six months. (Ingalls Aff. ¶ 5). He goes with a group of similar minded individuals to protest and share his faith on Friday mornings because the group understands that abortion procedures occur on Friday mornings.

       As a member of this group, Defendant has preached on the sidewalk outside of 443 Congress Street in order to convince women to "choose life for their unborn child." (Ingalls aff. ¶ 6). As may be seen in a YouTube video, submitted as State's Exhibit 2, Defendant Ingalls would stand on the sidewalk in front of 443 Congress Street and direct his message up towards the second floor where he understood the Planned Parenthood offices to be. Planned Parenthood

                              Plaintiff–Leanne Robbin, AAG
                              Defendant–Stephen Whiting, Esq.
       1                      and Kate Oliveri, Esq. (Visiting Attorney)

staff made noise complaints concerning Defendant Ingalls volume prior to the date in question.[1]

State's Exhibit 1 includes an audio clip recorded by Officer Shinay on August 21, 2015 of his conversations with Ingalls both preemptively and after a noise complaint was called in by the Planned Parenthood staff concerning his preaching. While Ingalls disagreed with Officer Shinay about whether he should be required to, Ingalls did preach more quietly after their conversation. Ingalls testified that he and Officer Holts had previously worked out a method for helping Ingalls comply with noise level restrictions when Officer Holts was covering the Planned Parenthood facilities. Officer Holts would give Ingalls a thumbs-down signal from his police cruiser if he needed to lower the volume and a thumbs-up signal if the volume was acceptable.

On the morning of October 23, 2015, Defendant Ingalls was directing his preaching towards the second floor of the building at 443 Congress St. The State contends that Defendant was loud enough to be heard in the examination and counseling rooms, thereby disrupting counseling that was occurring. Planned Parenthood staff made a noise complaint to the Portland Police Department, which was responded to by Sgt. Eric Nevins. Sgt. Nevins spoke with Ingalls and asked that he lower his voice to a level that could not be heard within the building. After Sgt. Nevins left the vicinity, the staff of Planned Parenthood again contends that they were able to hear Ingalls inside the building and that he

---

[1] Because of frequent protestors, in order to ensure the safety of patients and staff, Planned Parenthood hires Portland Police for overall scene security from time to time. At the time of the event in question, there was no officer specifically assigned to 443 Congress Street. Since then, Planned Parenthood has consistently hired the Portland Police Department on Friday mornings.

2

was disrupting medical services being provided. Another noise complaint was made and Sgt. Nevins again came to the Planned Parenthood facility. Ingalls saw Sgt. Nevins enter the building, but had left by the time Sgt. Nevins came back down to talk to him.

### B. *Procedural Background*

The State of Maine has brought this action against Ingalls for violation of the Maine Civil Rights Act pursuant to 5 M.R.S. § 4681. The State moves the court to grant a preliminary injunction. Ingalls objects, alleging that the imposition of an injunction would violate his First Amendment right to free speech pursuant to the U.S. Constitution.

## II. Discussion

The State seeks injunctive relief pursuant to the Maine Civil Rights Act, prohibiting Defendant Ingalls from "intentionally making any noise that can be heard within the building at 443 Congress Street in Portland, Maine or any other Planned Parenthood facility". The Maine Civil Rights Act authorizes the Attorney General to bring actions for injunctive relief against an individual who intentionally interferes with another person's exercise of constitutionally guaranteed rights. 5 M.R.S. § 4681. The Act specifies that an action may be brought where an individual, "[a]fter having been ordered by a law enforcement officer to cease such noise, intentionally mak[es] noise that can be heard within a building and with the further intent either: (1) To jeopardize the health of persons receiving health services within the building; or (2) To interfere with the safe and effective delivery of those services within the building." 5 M.R.S. § 4684-B. The State contends that Defendant Ingalls, after having been ordered by a law enforcement officer to lower his voice while preaching outside of the Planned

3

Parenthood facility on many occasions, continued to intentionally make noise that could be heard within the building with the intent to interfere with the safe and effective delivery of health services. Therefore, the State argues, they are more likely than not to prevail on the merits and the preliminary injunction should be granted.

Ingalls objects to the restriction of his right to free speech pursuant to the First Amendment of the U.S. Constitution, as incorporated to the State of Maine by the Fourteenth Amendment.[2] Defendant Ingalls contends that the proposed injunction is impermissibly based upon the content of his speech. A content-based regulation is only constitutional where the regulation is necessary to serve a compelling state interest and it is narrowly tailored to achieve that end. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (U.S. 1989). Thus, the court looks to the underlying regulation, not the injunction itself, to determine whether the restriction is content based.[3]

---

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

[3] As the court ruled in its order on Defendant's Motion to Dismiss, the Maine Civil Rights Act as enacted by the Maine Legislature is content neutral because its underlying purpose is unrelated to the content of expression. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (U.S. 1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.") The United States Court of Appeals for the Fist Circuit

4

In *Madsen v. Women's Health Center*, the Supreme Court explained the difference between an injunction and legislation in terms of review of the government action for compliance with the First Amendment. An ordinance is enacted through a reasoned choice by the legislature, whereas injunctions are remedies to violations of legislative regulation or judicial order. *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994). "An injunction, by its very nature, applies only to a particular group (or individuals) and regulates the activities, and perhaps the speech, of that group." *Id.* at 764. Therefore, "the fact that the injunction cover[s] people with a particular viewpoint does not itself render the injunction content or viewpoint based." *Id.* at 763, *citing Boos v. Barry*, 485 U.S. 312 (1988).

Because injunctions are more likely to be used discriminatorily or in an effort to censor, the Supreme Court has imposed a stringent application of First Amendment principles requiring that the "provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Madsen.* 512 U.S. at 765.

A. *Significant Government Interest*

The right to freedom of expression shall not be abridged without a showing of a significant government interest. "The right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendments, has a firmer foundation than the whims or personal opinions of a local governing body." *Niemotko v. Maryland*, 340 U.S. 268, 272 (1951). Defendant argues that "there is no valid state interest in

recently agreed, indirectly, with this court's conclusion. *March v. Mills*, 867 F.3d 46 (1st Cir. 2017).

5

prohibiting the unamplified sound of the human voice from the public sidewalk, especially when the voice does not imminently threaten to cause or actually cause a material disruption inside a clinic located next to loud, busy public streets and public sidewalks." Defendant's Reply to Motion to Dismiss, 2, *citing Cox v. Louisiana*, 379 U.S. 559, 562-64 (1965) (concerning protesting outside of a courthouse); *Coates v. Cincinnati*, 402 U.S. 611, 614-15 (1971) (concerning a city ordinance making it illegal for three or more people to congregate on a sidewalk in a manner annoying to people passing by).

The State contends that the significant government interest being protected by the issuance of this injunction would be the health of persons receiving health services and the safe and effective delivery of those services. The Supreme Court has repeatedly determined these to be significant government interest. *Madsen,* 512 U.S. 753 ; *McCullen v. Coakley*, 134 S. Ct. 2518, 189 L. Ed. 2d 502 (2014); *Schenck v. Pro-Choice Network of Western N. Y.*, 519 U.S. 357, 376 (1997). Additionally, the Supreme Court has considered the protection of a woman's right to seek medical counseling or services in connection with her pregnancy; ensuring the public safety and order by the free flow of traffic on streets and sidewalks; in securing medical privacy; and protecting the psychological and physical well-being of patients held "captive" by medical circumstances to be significant government interests. *Madsen,* 512 U.S. at 768. In *McCullen v. Coakley,* the Supreme Court again found "ensuring public safety outside abortion clinics, preventing harassment and intimidation of patients and clinic staff, and combating deliberate obstruction of clinic entrances" to be significant government interests. *McCullen,* 189 L. Ed. at 523; *see Schenck* 519 U.S. at 376.

6

Additionally, the Supreme Court has found a significant government interest in controlling noise levels outside of health treatment centers. "Hospitals, after all, are not factories or mines or assembly plants. They are hospitals, where human ailments are treated, where patients and relatives alike often are under emotional strain and worry, where pleasing and comforting patients are principal facets of the day's activity, and where the patient and his family . . . need a restful, uncluttered, relaxing, and helpful atmosphere." *NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 783-784, n. 12 (1979), *quoting Beth Israel Hospital v. NLRB*, 437 U.S. 483, 509 (1978) (BLACKMUN, J., concurring in judgment). The Supreme Court has found that regulations limiting noise outside of health treatment centers "burden no more speech than necessary to ensure the health and well-being of the patients at the clinic. The First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests." Madsen, 512 U.S. at 772-73. Based upon the caselaw of the High Court, this court finds that the protection of the combination of these governmental interests are sufficiently significant to allow for a narrowly tailored injunction.

B. *"burden no more speech than necessary"*

The State seeks a preliminary injunction that would enjoin Defendant Ingalls from:

 a. intentionally making any noise that can be heard within the building at 443 Congress Street in Portland, Maine or any other Planned Parenthood facility;
 b. engaging in any physical obstruction of the 443 Congress Street, Portland, Maine or any other Planned Parenthood facility;

c. knowingly coming within 50 feet of 443 Congress Street, Portland Maine or any other Planned Parenthood facility

Draft Order on Preliminary Injunction. In determining whether the proposed injunction has been crafted so as to "burden no more speech than necessary", the court looks to the specific circumstances of the injunction including those individuals it applies to, the type of speech being restricted, the place and time in which speech is restricted, and other opportunities open to expression. See *Ward,* 491 U.S. 781; *Madsen,* 512 U.S. 753; *McCullen,* 189 L. Ed. 502.

In *McCullen v. Coakley,* the Supreme Court reviewed whether a law establishing a 35-foot buffer zone around all reproductive health care facilities violated the First Amendment to the United States Constitution. The Court found that while the law itself was content neutral, and supported an important governmental interest, it was not sufficiently narrowly tailored and burdened the First Amendment rights of the public more than necessary. *McCullen,* 189 L. Ed. at 511. In *McCullen,* the Supreme Court extolled the virtues of injunctions targeting solely the individual and his or her conduct. "In short, injunctive relief focuses on the precise individuals and the precise conduct causing a particular problem. The Act, by contrast, categorically excludes non-exempt individuals from the buffer zones, unnecessarily sweeping in innocent individuals and their speech." *McCullen,* 189 L. Ed. at 524.

The Court emphasized the importance of making sure that the method of serving the important government interest is narrowly tailored and does not "exclud[e] individuals from areas historically open for speech and debate." The Court explained:

8

> Even today, they remain one of the few places where a speaker can be confident that he is not simply preaching to the choir. With respect to other means of communication, an individual confronted with an uncomfortable message can always turn the page, change the channel, or leave the Web site. Not so on public streets and sidewalks. There, a listener often encounters speech he might otherwise tune out. In light of the First Amendment's purpose 'to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail,' this aspect of traditional public fora is a virtue, not a vice.

*McCullen*, 189 L. Ed. at 514, citations omitted. For that reason, the government is limited in its ability to regulate speech in these areas. In light of the Court's decision in *McCullen*, an injunction placed upon one individual as a reaction to past actions is appropriately narrow and preserves for the general public the right to free expression.

While a preliminary injunction targeting Defendant Ingall's past conduct violating the Maine Civil Rights Act is appropriate, the restrictions suggested by the State go further than necessary. Multiple complaints about disruption of medical services have been made as a result of Defendant Ingalls' preaching outside of 443 Congress Street. The State has made no allegations that Defendant Ingalls blocked the entrance to the building or impermissibly harassed or threatened individuals as they entered the building. There have been no allegations that Defendant Ingalls' conduct, with the exception of the volume of his voice, was unlawful in any way. Therefore, the court views prohibiting Defendant Ingalls from coming within 50 feet of all Planned Parenthood facilities as an unnecessary burden on his right to free speech in a historically public forum. Such a restriction is not narrowly focused "on the precise individuals and the precise conduct causing a particular problem." Therefore, the court fashions

9

appropriately narrow injunctive relief as a restriction on the volume at which Defendant Ingalls may express himself outside of Planned Parenthood facilities.

In addition to ensuring that the injunction has been crafted so as to burden a defendant's rights no more than necessary in terms of time and place restrictions, the court must also look to whether other opportunities for expression remain open to those affected. *Perry*, 460 U.S. at 45 ("The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.") Under the preliminary injunction crafted by the court, Defendant is free to peacefully and legally picket, pass out pamphlets, and seek to counsel women as they enter Planned Parenthood facilities. There remain ample alternative channels for Defendant to communicate his message even with the restrictions imposed by such a preliminary injunction.

The court finds that a preliminary injunction prohibiting Defendant Ingalls from loudly expressing himself outside of Planned Parenthood facilities appropriately "burden[s] no more speech than necessary" in order to protect the significant interests described herein. The State has established a significant government interest; that irreparable injury may occur without that protection; that the preliminary injunction is narrowly tailored to burden Defendant's right no more than necessary; and that the public interest is not adversely affected by ordering the Defendant to comply with the preliminary injunction.

The court therefore concludes that the State is more likely than not to prevail on the merits of the underlying claim.

10

III.    Conclusion

Defendant Brian Ingalls is preliminarily enjoined from intentionally making any noise that can be heard within the building at 443 Congress Street in Portland, Maine or any other Planned Parenthood facility.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: 10/4/17

Lance E. Walker
Justice, Superior Court

11

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
Docket No.: CV-15-497

STATE OF MAINE

           Plaintiff,

v.

BRIAN INGALLS,

           Defendant

)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANT'S MOTION
TO DISMISS

STATE OF MAINE
Cumberland es Clerk's Office

MAR 17 2016

RECEIVED

This matter comes before the court on Defendant Brian Ingalls' motion to dismiss pursuant to M.R. Civ. P. 12(b)(6). For the reasons stated herein, Defendant's motion to dismiss is denied.

I. **BACKGROUND**

The State brings this action against Mr. Ingalls pursuant to the Maine Civil Rights Act, 5 M.R.S. §§ 4681 and 4684-B (2)(D) (hereafter the "Act"). The State alleges that on or about October 23, 2015, Mr. Ingalls yelled toward the second floor of the building located at 443 Congress Street in Portland, in which Planned Parenthood of Northern New England operates a health care facility. The State avers that Mr. Ingalls' yelled with the intent and did in fact cause the disruption of the safe and effective delivery of health services inside the facility in violation of the Act. The State requests that the court grant relief as follows: (1) enjoin Mr. Ingalls from knowingly coming within 50 feet of Planned Parenthood's facilities; (2) enjoin Mr. Ingalls from further violating section 4684(2)(D); (3) declare that Mr. Ingalls

1

violated the Maine Civil Rights Act; (4) order Mr. Ingalls to pay a civil penalty of up to $5,000 for each violation; and (5) order Mr. Ingalls to pay the State's reasonable attorney's fees.

## II.     **Standard of Review**

A motion to dismiss tests the legal sufficiency of the complaint and will be granted only if the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6); *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the material allegations in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff would be entitled to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that the plaintiff might prove in support of his or her claim. *Id.*

Defendant's motion to dismiss is bottomed on three main arguments; to wit:

1. The State has failed to make allegations that would support a claim under the Maine Civil Rights Act;

2. The relief sought by the State would constitute an impermissible restriction on Mr. Ingalls's speech rights that are afforded to him by the First Amendment; and

3. The salient provision of the Maine Civil Rights Act is unconstitutionally vague on its face.

2

III.  **Analysis**

A.  The Complaint sets forth allegations for which relief may be granted under 5 M.R.S. §§ 4681 and 4684-B.

The Maine Civil Rights Act empowers the Attorney General to bring an injunction action against a person who violates section 4684-B, entitled "Additional Protections." The relevant section of the "Additional Protections" section of the Act that the State presses, provides as follows:

> **2. Violation.** It is a violation of this section for any person, whether or not acting under color of law, to intentionally interfere or attempt to intentionally interfere with the exercise or enjoyment by any other person of rights secured by the Untied States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State by any of the following conduct:
>
>> D. After having been ordered by a law enforcement officer to cease such noise, intentionally making noise that can be heard within a building and with the further intent either:
>>
>> (1) To jeopardize the health of persons receiving health services within the building; or
>>
>> (2) To interfere with the safe and effective delivery of those services within the building.

The Act defines "health services" as "any medical, surgical, laboratory, testing or counseling service relating to the human body." 5 M.R.S. § 4684-B(1)(A).

The Complaint sets forth allegations, even without the assistance of viewing them in a light most favorable to the non-moving party, that amply support a claim for which relief may be granted under the foregoing provision of the Act.

Mr. Ingalls contends that the Complaint is deficient insofar as it does not allege that he engaged in violence, threats of violence, property damage or trespass. While those elements are predicate requirements of relief under a separate section

3

of the Act (§ 4681), they are not required for relief under section 4684-B, which revealingly is entitled "Additional Protections." The latter section of the Act is free standing, insofar as it delimits certain proscribed conduct untethered from the proscribed conduct under section 4681. For that reason the court is not required to reconcile the two provisions in the way that Mr. Ingalls suggests. Mr. Ingalls does not offer a canon of statutory construction which would support his interpretation, as none exists.

Mr. Ingalls also complains that the State fails to identify any patients or employees inside the Planned Parenthood offices who actually heard Mr. Ingalls preaching or whether it interfered with the safe and effective delivery of health services. The State counters that it will support its claim through testimony of Planned Parenthood employees without resorting to calling patients to testify. The court need not concern itself with the parties' trial strategy to resolve a motion to dismiss.

The courts do not require at the initial pleading stage the molecular level of detail that Mr. Ingalls contends the absence of which should result in a dismissal. Maine has long embraced the so-called "notice pleading" rule. *See Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 997 A.2d 741, 746 (stating that Maine is a notice pleading state). Notice pleading requires that a complaint give "fair notice of the cause of action," *id.* (quotation marks omitted), by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a)(1). "A complaint need not identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient

4

to demonstrate that the complaining party has been injured in a way that entitles him or her to relief." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶¶ 16-17, 19 A.3d 823, 828; *see also, Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 18, 711 A.2d 842, 848 (stating that notice pleading requires a party to "aver[] the essential elements" of a claim).

The Complaint comfortably clears the notice-pleading hurdle. That it lacks specific identification of the patient(s) or provider(s) who heard Mr. Ingalls, and how their hearing him interfered with the safe and effective delivery of health services is of no moment to the court for purposes of testing the legal sufficiency of the Complaint. The same is true of Mr. Ingalls argument that questions how the State could prove that he intended to interfere with the safe and effective delivery of health services. These are the types of concerns best expressed after an evidentiary record has been developed through the discovery process, which may include deposition testimony, document production and interrogatory answers. While these issues may be presented by motion for summary judgment or at trial in order to put the State to its proof, they are prematurely presented in a motion to dismiss.

B.    First Amendment Challenge

Defendant argues that the Act constitutes an impermissible restriction of his speech rights afforded to him by the First Amendment. An orderly analysis of that argument requires a review of foundational principles that were absent from the parties' briefs and oral arguments.

When a statute is challenged as unconstitutional either as applied or on its face, trial courts "must construe a statute to preserve its constitutionality, or to

5

avoid an unconstitutional application of the statute, if at all possible." *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 19, 41 A.3d 551 (citation omitted). "Thus, when there is a reasonable interpretation of a statute that will satisfy constitutional requirements, [courts] will adopt that interpretation, notwithstanding other possible interpretations of the statue that could violate the Constitution." *Id.* (citations omitted).

An analysis of a constitutional challenge to a statute begins with a presumption that the law is constitutional. *State v. Mosher*, 2012 ME 133, ¶ 10, 58 A.3d 1070 (citing *Godbout v. WLB Holding, Inc.*, 2010 ME 46, ¶5, 997 A.2d 92); *see also Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291 (noting a familiar principle that "[a] statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity"). "A challenger has the burden to demonstrate 'convincingly' that a statute conflicts with the constitution." *Id.* (citing *Godbout*, 2010 ME 46, ¶5, 997 A.2d 92). "[A]ll reasonable doubts must be resolved in favor of the constitutionality of the statute." *Id.* (quoting *Godbout*, 2010 ME 46, ¶5, 997 A.2d 92; citing *Driscoll v. Mains*, 2005 ME 52, ¶ 6, 870 A.2d 124)).

Courts "assume that the Legislature acted in accord with constitutional requirements if the statute can reasonably be read in such a way, notwithstanding other possible unconstitutional interpretations of the same statute." *State v. Letalien*, 2009 ME 130, ¶15, 985 A.2d 4 (citing *State v. Haskell*, 2001 ME 154, ¶ 4, 784 A.2d 4). "Great deference is given to social and economic regulations, and reasonableness is presumed because it is the job of the Legislature, not the courts, to

6

balance competing interests." *State v. Haskell*, 2008 ME 82, ¶ 5, 955 A.2d 737 (citing *Williamson v. Lee Optical*, 348 U.S. 483, 487 (1955)).

These principles are in harmony with those expressed by the Supreme Court. Facial challenges are disfavored for a variety of reasons, not the least of which is that they often rest on speculation, raising the risk of "premature interpretation of statutes on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 609, 124 S. Ct. 1941, 158 L. Ed. 2d 891 (2004).

Moreover, facial challenges undermine the democratic process by standing athwart the will of the people from being expressed in a fashion that is consistent with the Constitution. "A ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329, 126 S. Ct. 961, 163 L. Ed. 2d 812 (2006) (*quoting Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984) (plurality opinion)). "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 735 (1987).

1.     <u>Vagueness doctrine.</u>

Defendant's argument that the Act is unconstitutionally vague is a facial challenge to the statute. There is some authority for the proposition that the standard to be applied in such circumstances is not as burdensome as articulated in *Salerno*. *City of Chicago v. Morales*, 527 U.S. 41, 55, 144 L. Ed. 2d 67, 119 S. Ct. 1849 & n. 22, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999) (noting, in plurality

7

opinion, that the standard for evaluating facial challenges is not necessarily quite as demanding as indicated by Salerno, at least where vagueness concerns are present: a law is sometimes subject to facial attack where "vagueness permeates the text"); Richard H. Fallon, Jr., Commentary, As-Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321, 1321-23 (2000) (explaining the split on the Supreme Court over whether the Salerno formulation of facial challenges is correct or whether some slightly less demanding standard is appropriate).

Mr. Ingalls argues that the Act fails for vagueness because it does not contain and objective standard by which a person may determine the level of noise he is producing and whether it violates the Act. Mr. Ingalls complains that the Act ought to contain some objectively verifiable level of noise that is proscribed, such as decibel level or reference to adjectives such as "loud and raucous." Without an expressed limiting principle, Mr. Ingalls argues that the Act sweeps protected speech within its reach.

The State correctly cites to a series of cases that have examined the issue, several in the context of anti-noise statutes. The court's role in applying constitutional scrutiny to a statute is not to point out draftsmanship deficiencies. Metaphysical precision is not the constitutional requirement. All that due process requires is that the law gives fair notice of the conduct that is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A statute is "improperly vague when its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning." *City of Portland v. Jacobsky*, 496

8

A.2d 646, 649 (Me. 1985). A vagueness challenge must therefore demonstrate that no standard of conduct is specified by the statute, whatsoever.

The Act does not suffer from an epistemological problem that would render it unconstitutionally vague. The noise proscribed by the Act is one loud enough that it can be heard inside a building with the intent to and effect of interfering with the safe and effective delivery of medical services. The statute requires that the person be given a warning by a law enforcement officer, and if the person persists and does so with the intent to interfere with the safe and effective delivery of medical services, the Act may be enforced. Whatever else may be said about this provision of the Act, it provides fair notice of the conduct that it proscribes. For these reasons the court rejects Defendant's challenge to the Act as unconstitutionally vague.

2.     Time, Place, and Manner Restrictions

Mr. Ingalls argues that the State is enforcing the Act against him because it objects to the content of his speech, not its volume. Defendant fashions the argument as an as-applied challenge. However, because there is no evidentiary record upon which Mr. Ingalls relies at this nascent stage, the court must necessarily analyze the argument as a facial challenge to the Act.

It is axiomatic that the government may not regulate speech based on its hostility or favoritism towards the message expressed. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992). Likewise, the government may not restrict protected speech simply because it annoys, causes emotional upset, or expresses an unpopular political or religious viewpoint. *Snyder v. Phelps*, 131 U.S. 1207, 1219 (2011).

9

The State argues that the Act represents a permissible time, place and manner restriction on protected speech. *Ward v. Rock Against Ra*cism, 491 U.S. 781, 791 (1989) (government may impose reasonable restrictions on the time, place, or manner of protected speech). As such, the court must subject the Act to a four-part analysis to test its constitutionality. The restrictions must be (1) content neutral; (2) narrowly drawn; to (3) serve a significant government interest; and (4) leave open alternative channels of communication. *Id.*

The Act is content neutral. The inquiry for determining content neutrality "is not whether applying the statute requires some reference to the content of speech, but whether the legislative reason for the law is content neutral." *Hill v. Colo.*, 530 U.S. 703, 719, 720 (2000). The Act clearly has content-neutral purposes; to wit, protecting the safe and effective delivery of medical care. The fortuity that that the regulation has an incidental effect on some speakers or messages but not others is of no moment to the analysis. *Ward*, 491 U.S. at 791. The statute is a reflection of the recognition in First Amendment jurisprudence that the "right to speak does not carry with it a duty on the part of the hearer to listen." *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 975 S.W.2d 546, 555 (Tex. 1998). This is particularly true in those instances where the regulation is aimed against a captive listener exercising her right to medical care.

The Act is narrowly drawn to serve a significant government interest. The Act merely prohibits making noise loud enough to be heard inside the building with the intent to jeopardize the health of the person receiving medical care or to disrupt the safe and effective delivery of medical care. The Act affords one warning from a

10

law enforcement officer, which would allow the person to seize upon the other alternative means to exercise his message in the speech marketplace. The significant government interest, as explicated above, is the protection of captive listeners to obtain safe and effective medical care.

The Act allows for alternative channels of communication. The Act does not prohibit Mr. Ingalls from handing out leaflets, displaying signs, or from counseling or preaching in a conversational tone. It does not prohibit Mr. Ingalls from speaking in other than a conversational tone if done without the intent to interfere with the safe and effective delivery of medical services inside the building. The court is satisfied that the Act is nothing more than a simple time, place and manner restriction.[1]

Although neither of the parties addressed the distinction between a facial and an as-applied challenge to the Act, the court addresses that issue separately to clarify the future course of proceedings. The motion to dismiss merely tests the legal sufficiency of the Complaint and, as such, does not involve the evaluation of an evidentiary record. By its own procedural limitations, any constitutional issues raised in the motion to dismiss and rejected by the court involve only a rejection of facial challenges to the statute. A facial challenge is only successful when there are no circumstances under which the Act would be valid.

While the court concludes that the Act is valid on its face, it is still possible that enforcement against a person in a particular situation could be invalid on an as-applied basis. Mr. Ingalls preserves the opportunity in this case to show that he is

---

[1] *See, e.g., Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994); *Pine v. City of W. Palm*

11

such a person, after an evidentiary record is developed through discovery. Such a challenge may be based on the argument that while the Act itself is neutral and constitutional on its face, it has been enforced selectively in a viewpoint discriminatory way against Mr. Ingalls. The denial of Defendant's motion to dismiss does not impair his right to present an as-applied challenge if supported by the record evidence and the law.

For the foregoing reasons, Defendant's motion to dismiss is denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: _____3/17/16_____

_____
Lance E. Walker
Justice, Superior Court

12